1

2

3

4

5
                                           The Honorable Ronald B. Leighton

6

7            UNITED STATES DISTRICT COURT
           WESTERN DISTRICT OF WASHINGTON
                      AT TACOMA

8

WILLIAM OSTLING, individually and as
9   Personal Representative of the Estate of          NO.  3:11-cv-05219-RBL
   DOUGLAS OSTLING, deceased; JOYCE
10   OSTLING; and TAMARA OSTLING;                    **ROBERTS DECLARATION IN**
                                                    **SUPPORT OF PETITION FOR FEES**
11                             Plaintiffs,
                   v.
12
   CITY OF BAINBRIDGE ISLAND, a political
13   subdivision of the State of Washington; JON
   FEHLMAN; and JEFF BENKERT;
14
                             Defendants.
15

16   Nathan P. Roberts declares and states as follows:

17         1.      I am an attorney of record for the Ostling Family, Plaintiffs in this matter.  I

18   make this declaration in support of Plaintiffs' Motion for Attorneys' Fees & Costs, pursuant

19   to 42 U.S.C. § 1988.  I am over the age of eighteen and am competent to testify to the matters

20   set forth herein.

21         2.      I have compiled time records for the hours expended on this case based on my

22   review of the files, including the pleadings, correspondence, court file, discovery materials,

23   electronic mail records, electronic and paper calendars, combined with my own recollection.

ROBERTS DECLARATION - 1 of 3                    **CONNELLY LAW OFFICES**
(No. 3:11-cv-05219-RBL)                              2301 North 30th Street
                                                    Tacoma, WA  98403
                                            (253) 593-5100 Phone - (253) 593-0380 Fax

1   The number of hours listed is understated, as countless hours were spent on phone calls,

2   informal conferences, and other miscellaneous matters and tasks were never documented and

3   have since been forgotten (and are therefore not included).  A true and correct copy of my

4   time record is attached hereto as Exhibit A.

5          3.      My time is being billed at the rate of $325 per hour.  This represents the mid-

6   range of the average hourly rates being charged by other mid-level or senior associate

7   attorneys within the Western District of Washington, as confirmed by The National Law

8   Journal's 2011 sampling of nation-wide billing rates.  A true and correct copy of an excerpt

9   from that survey is attached hereto as Exhibit B.

10         4.      By way of background, I graduated *magna cum laude* from Seattle University

11  School of Law in 2008 and was admitted to practice shortly thereafter.  I have previously tried

12  civil cases to verdict in the U.S. District Court for the Western District of Washington and in

13  Washington State Superior Courts for Pierce and King Counties.  In my role as a senior

14  associate attorney at Connelly Law Offices, I routinely assume primary responsibility for the

15  litigation and trial of complex personal injury, wrongful death, and civil rights cases.  A true

16  and correct copy of my current curriculum vitae is attached hereto as Exhibit C.

17         5.      This matter was accepted on a contingent basis, meaning that none of the

18  lawyers who worked on the matter would have been paid a penny had we not succeeded at

19  trial.   My research indicates that the odds of succeeding at a jury trial on a civil rights case

20  are roughly one-in-three.  A true and correct copy of the Bureau of Justice Statistics survey to

21  that effect is attached hereto as Exhibit D.

22         6.      I recently participated in an internal marketing analysis conducted by Connelly

23  Law Offices.    During that process, we learned that the firm is currently rejecting

ROBERTS DECLARATION - 2 of 3
(No. 3:11-cv-05219-RBL)

**CONNELLY LAW OFFICES**

2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax

1    approximately 98% of the prospective clients that contact our office seeking representation.

2    While some of these clients must be turned away because of an adverse assessment on the

3    merits, a good portion are rejected because of work-load levels.  The firm operates at capacity

4    and has done so since its inception in 2006; this means that  other matters were not being

5    taken or pursued by counsel from Connelly Law Offices because of the vast amounts of time

6    expended on the Ostling matter.  It is noteworthy that a substantial number of those cases

7    were potentially easier and more-lucrative than the work on the Ostling matter.  The Ostling

8    case was prioritized over those other matters due to the significance of the Constitutional,

9    personal, and social issues at play in the case—to the financial detriment of the firm and each

10   of the individual the lawyers working on it.

11          I declare under penalty of perjury of the laws of the State of Washington that the

12   foregoing is true and correct to the best of my knowledge and belief.

13          Signed this 15th day of June, 2012, at Tacoma, Washington.

14

15

16          Nathan P. Roberts, WSBA No. 40457

17

18

19

20

21

22

23

ROBERTS DECLARATION - 3 of 3
(No. 3:11-cv-05219-RBL)

**CONNELLY LAW OFFICES**
2301 North 30th Street
Tacoma, WA  98403
(253) 593-5100 Phone - (253) 593-0380 Fax



EXHIBIT A

| Date | Time | Description |
|------|------|-------------|
| 11/4/2010 | .5 | Receive and review fax correspondence; conference call with referring attorney McGonagle re: facts of case and potential for litigation |
| 11/4/2010 | .4 | Review, edit, and sign preservation notices to BIPD and Kitsap County |
| 11/8/2010 | 1.3 | Client intake meeting |
| 11/10/2010 | 1.4 | Legal research and report re: availability of general damages under s1983 versus state law for unmarried, disabled, adult male |
| 11/11/2010 | .1 | Review PRA response from CENCOM (911) |
| 11/14/2010 | .3 | Review and respond to e-mail from co-counsel (for family) re: expectations of litigation process, timeline, investigation, costs, etc. |
| 11/22/2010 | .4 | Receive correspondence from attorney Stew Estes re: preservation hold; draft and finalize response |
| 11/23/2010 | .1 | Review e-mail from Estes re: preservation |
| 11/29/2010 | .2 | Edit and sign PRA request to Kitsap County |
| 12/23/2010 | .2 | e-mail correspondence with client |
| 12/28/2010 | .2 | e-mail correspondence with client |
| 1/4/2011 | .7 | Review and revise draft letter to KCPO re: decline to prosecute case; correspondence with family |
| 1/19/2011 | .3 | Telephone conference with potential expert VanBlaricom re: case |
| 2/2/2011 | .2 | Review and respond to attorney e-mail re: factual discrepancies in police version of events |
| 2/28/2011 | 1.1 | Client meeting |
| 3/13/2011 | 3.4 | Draft complaint & send to client for review and comment |
| 3/14/2011 | .3 | Conference call with clients re: changes to complaint |
| 3/22/2011 | .1 | e-mail correspondence with Estes re: service of process |
| 3/23/2011 | .1 | e-mail correspondence with Estes re: service of process |
| 3/24/2011 | .5 | Review scheduling & minute orders from Court |
| 3/25/2011 | .4 | Draft and file amended complaint |
| 3/25/2011 | .5 | Legal Research & Writing: Amended Complaint |
| 3/29/2011 | .1 | Additional correspondence with Estes re: service of process |
| 4/4/2011 | .1 | Review Final Acceptance of Service |
| 4/11/2011 | 4.3 | Receive and review answer to complaint; legal research re: qualified immunity and standing issues |
| 4/28/2011 | 3 | Receive and Review Motion to Dismiss; Begin Legal Research |
| 4/29/2011 | .8 | Review 12c motion w/JCJ; discuss response |
| 5/9/2011 | .3 | Correspondence with client re: defense answer and motion to dismiss |
| 5/11/2011 | .2 | e-mails w/JAK re: door retrieval |
| 5/11/2011 | 5 | Legal Research & Writing: Response to Motion to Dismiss |
| 5/15/2011 | 6.5 | Legal Research & Writing: Response to Motion to Dismiss |
| 5/16/2011 | 3.5 | Review and finalize response to 12(c) motion |
| 5/17/2011 | .2 | Draft and send correspondence to client attaching and explaining 12c response |
| 5/20/2011 | 2.5 | Receive & review reply re: motion to dismiss; additional legal research |
| 5/26/2011 | .3 | e-mail correspondence with Estes re FRCP 26 conference |

| 6/7/2011 | 1.3 | e-mail correspondence with Estes attaching JSR and FRCP 26 conference; reviewed defense counsel's proposed revisions to order; respond to additional changes |
|---|---|---|
| 6/7/2011 | .5 | Review, finalize, and file JSR |
| 6/15/2011 | .6 | Receive and review defense's initial discovery disclosures |
| 6/15/2011 | .8 | Conference and correspondence with clients re: potential witnesses for initial disclosures |
| 6/15/2011 | .5 | Draft and send correspondence and proposed stipulation for e-service |
| 6/16/2011 | .1 | Follow-up e-mail to Estes re: electronic service agreement |
| 6/16/2011 | 1.5 | Review Initial Disclosures |
| 7/6/2011 | .2 | Notice of Unavailability |
| 7/8/2011 | .3 | Search file and renew request to Estes for copy of insurance policy (withheld) |
| 7/12/2011 | .6 | Review order denying 12c motion; draft and send correspondence to client enclosing and explaining order |
| 7/12/2011 | .4 | Receive, review, and analyze CBI insurance policy (WCIA) |
| 7/12/2011 | .8 | Receive and Review order on 12(c); communicate result to client |
| 7/13/2011 | .2 | Respond to client inquiry re 12c order |
| 8/15/2011 | .3 | Expert research and e-mail with PSW re: expert retention and disclosures |
| 8/29/2011 | .2 | Research and e-mail correspondence re: disclosure of special needs trust and guardianship file information |
| 9/27/2011 | .6 | Correspondence with Estes re: defense request for extension, possible protective order, and regarding joint inspection of physical evidence at KCSO evidence locker |
| 9/27/2011 | .7 | Discussed case (facts, history, procedural posture) with JAK for incoming 3C status; forwarded complaint and other docs for review |
| 9/27/2011 | .4 | Initial call to expert Noedel discussing case and requesting review |
| 9/27/2011 | 1 | Conference call w/expert Noedel |
| 9/28/2011 | 1.2 | Review file and cull medical "hot docs"; draft and send initial inquiry letter to expert Cummins, requesting review |
| 9/28/2011 | .5 | Review file and cull ballistics "hot docs"; draft and send e-mails to Noedel confirming retention |
| 9/30/2011 | .9 | Review and comment regarding draft report from expert Van Blaricom |
| 10/3/2011 | .6 | Read and respond to correspondence from Estes enclosing proposed protective order |
| 10/5/2011 | .7 | e-mail correspondence with expert Cummins re: preliminary opinions and requirements of FRCP 26 expert report and disclosure package |
| 10/5/2011 | .5 | Review and sign retainer agreement; e-mail correspondence with expert Noedel |
| 10/6/2011 | .2 | Additional correspondence with Cummins answering questions, attaching timeline and select autopsy photographs |
| 10/10/2011 | .1 | e-mail to CLO staff re: JAK case involvement |
| 10/10/2011 | 2.7 | Receive and review defense correspondence, discovery responses, draft protective order; begin drafting letter to Estes re: deficiencies |
| 10/12/2011 | .4 | Finalize and send letter to Estes re: discovery deficiencies |
| 10/14/2011 | .2 | Additional e-mail to Estes re: draft protective order |
| 10/17/2011 | .9 | Review stipulated protective order, proposed changes, e-mail correspondence to Estes re: same |

| | | |
|---|---|---|
| 10/18/2011 | .2 | e-mail correspondence with client |
| 10/24/2011 | .1 | e-mail response to inquiry by expert Noedel |
| 10/24/2011 | .1 | e-mail correspondence to clients re: site visit |
| 10/25/2011 | .1 | e-mail correspondence with clients re: site visit |
| 10/26/2011 | .1 | Additional e-mail correspondence with clients re: site visit |
| 10/26/2011 | 4.5 | Review & Catalogue Defendants' First and First Supplemental Discovery Responses |
| 10/27/2011 | .6 | Discovery conference (phone) with Estes; draft and send correspondence confirming dispute over protective order |
| 10/29/2011 | .4 | Review and comment on draft report by expert Cummins |
| 11/1/2011 | .2 | Review letter from Estes re: subpoenas |
| 11/3/2011 | .2 | Correspondence and discussion w/JAK re: site and evidence inspection |
| 11/3/2011 | 3.5 | Review & Catalogue Defendants' First and First Supplemental Discovery Responses |
| 11/6/2011 | .2 | Correspondence and conference re: site and evidence inspection |
| 11/6/2011 | .2 | Review and respond to e-mail correspondence from client |
| 11/7/2011 | .1 | Additional correspondence re: site inspection |
| 11/8/2011 | .3 | Multiple e-mails and calls re: site inspection and home access |
| 11/9/2011 | .7 | Draft, review, and send correspondence to Estes re: discovery |
| 11/10/2011 | .5 | e-mail correspondence w/Estes re: discovery |
| 11/14/2011 | .6 | Review and respond to Augenthaler letter |
| 11/17/2011 | .4 | Review updated protective order; e-mail with attorney Augenthaler re: same |
| 11/18/2011 | .2 | Correspondence w/clients |
| 11/18/2011 | 1.7 | File review; draft and send e-mail to Estes re: outstanding discovery |
| 11/21/2011 | .8 | Correspondence with expert Van Blaricom; additional materials located and attached |
| 11/22/2011 | .2 | Additional e-mails to Van Blaricom |
| 11/23/2011 | .4 | Review report of expert Bragg; research |
| 11/23/2011 | .8 | Correspondence and review preliminary report from expert Noedel |
| 11/25/2011 | .2 | e-mail correspondence w/JAK |
| 11/28/2011 | .3 | Additional e-mail correspondence with experts Van B, Noedel, and attorney Estes |
| 11/28/2011 | 4.5 | Site Visit w/Van Blaricom |
| 12/1/2011 | .2 | e-mail correspondence w/K. Hendrickson |
| 12/3/2011 | .2 | e-mail correspondence w/Van Blaricom re: officer interviews |
| 12/3/2011 | 1.1 | Protective order draft and correspondence to Augenthaler |
| 12/3/2011 | .4 | Draft and send correspondence to Estes re: discovery |
| 12/6/2011 | .8 | Review updated report by Van Blaricom; e-mail correspondence to expert |
| 12/6/2011 | .4 | Notices of deposition and e-mail correspondence from Estes |
| 12/8/2011 | 1.2 | Correspondence with clients, Estes re: scheduling and outstanding discovery |
| 12/12/2011 | .2 | e-mail w/PSW re:  scheduling |
| 12/15/2011 | 2.8 | Review updated discovery responses from defense; e-mail formal objections and designations to Estes; e-mail correspondence w/Augenthaler |
| 12/16/2011 | 1.8 | Review e-mail from Estes; review discovery responses; respond to inquiry |
| 12/16/2011 | .6 | Additional e-mails re: scheduling efforts |
| 12/18/2011 | .1 | e-mails with clients |

| 12/19/2011 | 1.4 | Multiple e-mails with defense counsel re: scheduling and discovery |
|---|---|---|
| 12/19/2011 | 2.5 | File review; pre-deposition meeting w/clients |
| 12/20/2011 | .2 | Additional e-mails with defense counsel re: scheduling issues |
| 12/20/2011 | 8 | Deposition of Bill Ostling |
| 12/21/2011 | 3 | Deposition of Tamera Ostling |
| 12/21/2011 | 1.5 | Pre-deposition meeting w/Tamera Ostling |
| 12/23/2011 | .1 | e-mail with Augenthaler re: stipulations and releases |
| 12/29/2011 | .4 | File review; additional e-mail to Estes re: failure to produce discovery |
| 12/29/2011 | 3.7 | Receive and review BIPD GOM; bookmark and pull sections for hot docs |
| 1/1/2012 | 4.5 | Research, File Review & Preparation for Deposition of Defendant Benkert; prepare outline; e-mail to JAK |
| 1/2/2012 | 7.5 | Depositions of Portrey & Benkert – Seattle |
| 1/4/2012 | 1.2 | Receive and review Benkert and Portrey depositions transcripts |
| 1/5/2012 | .8 | Receive and review Bill Ostling deposition transcript |
| 1/5/2012 | .1 | Update calendar |
| 1/9/2012 | .2 | e-mails with Estes re: discovery |
| 1/10/2012 | .3 | e-mails with Augenthaler re: releases; review file; respond to inquiry |
| 1/12/2012 | .2 | Correspondence w/LAPD re: subpoena compliance |
| 1/13/2012 | .2 | Receive and review objection to LAPD subpoena |
| 1/16/2012 | 4.5 | Prepare for Depositions of Misc. BIPD Witnesses; Conference w/JCJ |
| 1/17/2012 | 8.5 | Depositions of Fehlman, Berg, Jensen, B. Sias, C. Sias – Seattle |
| 1/18/2012 | .7 | Multiple calls and e-mails re: weather cancellation |
| 1/19/2012 | .4 | e-mails w/defense counsel re: continued weather cancellation |
| 1/20/2012 | .1 | e-mail to defense counsel re: Peters dep |
| 1/23/2012 | .3 | Call and follow-up e-mail to LAPD re: subpoena compliance |
| 1/23/2012 | 1 | Review multi-part written inquiry from Cummins re: addition case details; file review and research; e-mail response |
| 1/23/2012 | .2 | e-mails w/Estes re: deposition make ups |
| 1/23/2012 | 4.5 | Deposition of Van Blaricom – Seattle |
| 1/24/2012 | .1 | E-mail w/LAPD re: subpoena compliance |
| 1/24/2012 | 5 | Pre-deposition meeting w/Cummins; Depositions of Cummins – Seattle |
| 1/25/2012 | .3 | Conference call w/LAPD attorney re: subpoena, protective order, etc |
| 1/25/2012 | .7 | Multiple e-mails w/Estes re: outstanding discovery |
| 1/26/2012 | .3 | e-mails w/paralegal PSW re: motion for relief from deadline |
| 1/26/2012 | .1 | e-mails w/client |
| 1/26/2012 | 1.5 | Receive and review Augenthaler decl. and motion to seal; legal research |
| 1/26/2012 | 4.5 | Legal Research & Writing: Motion, Declaration, and Proposed Order Re: relief from deadline |
| 1/27/2012 | .2 | Correspondence to Estes re: missing polygraph |
| 1/29/2012 | .3 | Review updated report from Van Blaricom; forward to defense counsel |
| 1/29/2012 | .1 | e-mail to Estes re: polygraph |
| 1/29/2012 | 3 | Legal Research & Writing: Opposition, Declaration, and Proposed Order Re: Defendant's Motion to Seal |
| 1/30/2012 | 8 | Preparation and travel for Depositions of Izenberg & Nelson |
| 1/30/2012 | 2.5 | Legal Research & Writing: Opposition, Declaration, and Proposed Order Re: Defendant's Motion to Seal |

| 1/31/2012 | 12 | Depositions of Izenberg & Nelson; Return Travel |
|---|---|---|
| 1/31/2012 | .5 | Receive and Review Updated Motion to Seal, Dec. of Augenthaler |
| 1/31/2012 | .1 | Receive and Review Order on Motion to Seal |
| 2/1/2012 | .2 | Additional e-mails re: additional site inspection |
| 2/2/2012 | 2.5 | Receive and Review Motion for Protective Order; Dec. of Augenthaler; Legal Research |
| 2/3/2012 | 2 | Receive and Review Additional Motion to Seal; Legal Research & Writing |
| 2/6/2012 | .4 | Conference w/paralegal and f/u e-mail to Estes re: polygraph |
| 2/6/2012 | 4.5 | Legal Research & Writing: Opposition and Declaration Re: Defendant's Motion for Protective Order |
| 2/7/2012 | .1 | e-mail correspondence with clients |
| 2/7/2012 | 2.3 | Legal research and writing re: dishonesty findings |
| 2/7/2012 | 4.5 | Legal Research & Writing: Opposition, Declaration, and Proposed Order Re: Defendant's Motion to Seal |
| 2/8/2012 | .5 | Receive and Review Defendant's Reply in Support of Motion to Seal |
| 2/8/2012 | 2.5 | Review and Finalize Opposition and Declaration Re: Defendant's Motion for Protective Order |
| 2/9/2012 | 5 | Depositions of Bob Day and Trevor Ziemba – Seattle |
| 2/9/2012 | .2 | Receive and Review Additional Motion to Seal by Defense |
| 2/10/2012 | .1 | Review updated request for entry and inspection; forward to client |
| 2/10/2012 | 1.5 | Complete, review, and file redacted motion to compel |
| 2/10/2012 | .1 | Receive and review order granting overlength briefing on SJ |
| 2/10/2012 | .8 | Receive and review reply in support of protective order |
| 2/12/2012 | .2 | e-mail with client |
| 2/12/2012 | 2 | Research, File Review & Preparation for Deposition of Defense Expert Amdur |
| 2/13/2012 | 3.5 | Deposition of Amdur – Seattle |
| 2/13/2012 | 1.5 | Receive and review opposition to motion to compel; legal research |
| 2/15/2012 | 3.5 | Legal Research & Writing: declaration and reply in support of motion to compel LAPD records |
| 2/17/2012 | 1 | Review and finalize reply in support of motion to compel LAPD records |
| 2/20/2012 | .1 | e-mail to clients |
| 2/22/2012 | 1.5 | Prepare for and attend status conference |
| 2/22/2012 | 2.5 | Research, File Review & Preparation for Deposition of Expert Fountain |
| 2/23/2012 | .2 | e-mail to LAPD attaching court order enforcing subpoena, discussing production |
| 2/23/2012 | 6.5 | Depositions of Fountain, Bragg, Van Blaricom – Seattle |
| 2/25/2012 | 4 | Legal research and writing: response to defendant's motion for summary judgment |
| 2/26/2012 | 7 | Legal research and writing: response to defendant's motion for summary judgment |
| 2/27/2012 | 2.8 | Draft and revise declaration for Bill Ostling; forward to client; receive, review and incorporate changes from client |
| 2/28/2012 | .2 | Finalize declaration and forward to Bill for signature and return |
| 2/28/2012 | 1.7 | Draft declaration of Van Blaricom; sent for review; 2nd version reviewed and finalized |
| 3/2/2012 | 1.2 | Review and revise supplemental disclosures w/PSW |

| 3/2/2012 | 3.5 | Legal research and writing: response to defendant's motion for summary judgment |
| 3/3/2012 | 12 | Legal research and writing: response to defendant's motion for summary judgment |
| 3/4/2012 | 13.5 | Legal research and writing: response to defendant's motion for summary judgment |
| 3/5/2012 | 2.5 | Legal Research & Writing: Review, Finalize, and File Response to SJ, Dec of NPR, Dec of Ostling, Dec of Van Blaricom, Dec of Peters, Dec. of Noedel |
| 3/12/2012 | .1 | e-mail to client |
| 3/12/2012 | 3 | Legal research and writing: additional authority on summary judgment |
| 3/12/2012 | 1 | Meeting w/lay witness |
| 3/12/2012 | 1.5 | Receive and Review Reply on Summary Judgment, Dec of Fehlman |
| 3/13/2012 | 2.5 | Legal Research & Writing: Additional Authorities on Summary Judgment |
| 3/15/2012 | .2 | E-mail to Estes w/supplemental disclosure of opinions |
| 3/16/2012 | 1.5 | Receive and Review Defense Surreply; Legal Research |
| 3/20/2012 | 3.5 | Review draft exhibit list; e-mail to Estes re: exhibit exchange |
| 3/23/2012 | .2 | e-mails to experts re: trial exhibits |
| 3/24/2012 | .1 | e-mail w/expert Noedel re: trial exhibits |
| 3/27/2012 | .2 | e-mail to client |
| 3/28/2012 | 2 | Draft, review, and edit pretrial statement; forward to Estes for signature |
| 4/2/2012 | .1 | e-mail to client |
| 4/4/2012 | .6 | Pre-mediation phone conference w/clients |
| 4/5/2012 | .1 | e-mail to Estes re: exhibits and pretrial order |
| 4/6/2012 | .2 | e-mail to Estes re: necessity of exhibit review |
| 4/7/2012 | .1 | e-mail to Estes re: MILs |
| 4/7/2012 | 4.5 | Legal Research & Writing: Plaintiffs' Motions in Limine |
| 4/9/2012 | .2 | Multiple e-mails to Estes re: pretrial statement |
| 4/9/2012 | 5 | Legal research and writing: draft motions in limine |
| 4/9/2012 | .2 | Draft e-mail to Estes re: MIL conference call |
| 4/9/2012 | 2.5 | Receive and Review Defense Motions in Limine; Legal Research |
| 4/9/2012 | 1.5 | Review and Finalize Plaintiffs' Motions in Limine |
| 4/10/2012 | 3 | Revise pretrial order; send to Estes for review |
| 4/11/2012 | .1 | e-mail to Estes |
| 4/12/2012 | .1 | e-mail to client |
| 4/12/2012 | .1 | Receive and Review: Motion to Dispense w/Pretrial Order |
| 4/13/2012 | 1.5 | Draft and finalize mediation submission to Teri Wakeen |
| 4/16/2012 | 4.5 | Client Meeting & Mediation – Seattle |
| 4/18/2012 | .1 | Review correspondence re: subpoenas |
| 4/18/2012 | .8 | Legal Research & Writing: response to Motion to Dispense w/Pretrial Order |
| 4/19/2012 | .2 | e-mails re: trial prep and trial material distribution |
| 4/19/2012 | 1.5 | Legal Research & Writing: Response to Defense MILs |
| 4/22/2012 | 3.5 | Legal Research & Writing: Response to Defense MILs |
| 4/23/2012 | .1 | e-mail re: MILs drafts |
| 4/23/2012 | 5.5 | Legal research & writing: Plaintiffs' response in opposition to defendants' motions in limine |
| 4/23/2012 | .7 | Draft and edit combined proposed order on MILs |

| 4/23/2012 | .1 | Receive and Review: Order to Dispense w/Pretrial Order |
|---|---|---|
| 4/23/2012 | .5 | Receive and Review: Defense Response to MILs; Dec of Estes |
| 4/23/2012 | 1 | Review and Finalize Response to Defense MILs |
| 4/24/2012 | .1 | e-mails re: letter of ADR compliance |
| 4/24/2012 | .1 | e-mail to Augenthaler re: jury instructions |
| 4/24/2012 | 1.2 | Legal research & writing: review defense proposed jury instructions |
| 4/25/2012 | .1 | e-mail to co-counsel re: proposed voir dire |
| 4/26/2012 | .1 | e-mail re: proposed witness & exhibit lists |
| 4/26/2012 | .5 | Review defense proposed witness & exhibit lists |
| 4/26/2012 | 1.5 | Legal research & writing: update to plaintiffs' proposed instructions |
| 4/26/2012 | .2 | e-mails to co-counsel re: proposed instructions |
| 4/27/2012 | 1 | Meeting w/JCJ & JAK re: trial strategy, voir dire, division of roles, etc |
| 4/27/2012 | .2 | e-mail to Estes re: updated proposed instructions |
| 4/27/2012 | .1 | e-mail to Estes w/updated W&E list and Plaintiffs' instructions |
| 4/27/2012 | 2.5 | Review, finalize, file Joint pre-trial witness & exhibit list |
| 4/29/2012 | 2.5 | Legal Research & Writing: voir dire and plaintiffs' trial brief |
| 4/29/2012 | 3.5 | Legal Research & Writing: Plaintiffs' Proposed Jury Instructions |
| 4/30/2012 | 1.8 | Compare/contrast proposed jury instructions by plaintiffs/defendants; work to sort and prepare combined set; e-mails to PSW & Estes re: same |
| 4/30/2012 | .3 | e-mails to JCJ re: trial strategy |
| 4/30/2012 | 2.7 | Legal research & writing: trial brief |
| 4/30/2012 | .6 | Review defense voir dire and trial brief |
| 4/30/2012 | 1.2 | Legal research & writing: plaintiffs' proposed voir dire |
| 4/30/2012 | .1 | e-mail to co-counsel re: voir dire |
| 4/30/2012 | .8 | Receive and review and defense trial brief, voir dire |
| 4/30/2012 | 1 | Review, finalize, and file proposed voir dire and trial brief |
| 5/1/2012 | .5 | Prepare and send uncited version of jury instructions to order box |
| 5/1/2012 | .3 | e-mails to co-counsel, PSW, re: trial subpoenas, witnesses, exhibits, etc. |
| 5/1/2012 | .1 | e-mail to Boring w/MS Word version of witness & exhibit list |
| 5/1/2012 | .2 | Receive & review Court's order on MILs |
| 5/2/2012 | .5 | Legal research & writing: availability of stay pending resolution of qualified immunity appeal |
| 5/2/2012 | .4 | Letter to Estes re: subpoenas |
| 5/3/2012 | .1 | e-mail to clients |
| 5/3/2012 | 2.5 | Finalized agreed jury instructions; e-mails to Augenthaler re: same |
| 5/3/2012 | .5 | Review and finalize agreed jury instructions |
| 5/4/2012 | .1 | e-mails w/Boring re: trial schedule |
| 5/4/2012 | 2 | Prepare for and attend pre-trial conference |
| 5/5/2012 | .2 | e-mails w/client |
| 5/6/2012 | 8.5 | Trial Preparation: Witness Outlines; Being Opening Statement |
| 5/7/2012 | .1 | e-mail re: trial attendance |
| 5/7/2012 | .2 | Calendar review & e-mails re: witness scheduling |
| 5/7/2012 | .1 | E-mail to BIFD general counsel re: Bailey |
| 5/7/2012 | 1.2 | Receive and review order on motion for summary judgment; legal research; e-mails to co-counsel & clients |
| 5/8/2012 | .2 | E-mail to BIFD general counsel re: Bailey; discussed issue w/PSW |

| 5/8/2012 | .8 | Meeting w/expert Wieholdt re: trial aides/visuals |
|---|---|---|
| 5/8/2012 | 4.5 | Legal Research & Writing: Response to Motion to Dismiss |
| 5/8/2012 | 1.5 | Receive and Review Motion for Reconsideration & Motion for Clarification |
| 5/9/2012 | .1 | E-mail to BIFD general counsel re: Bailey |
| 5/9/2012 | .2 | E-mails w/Estes re: trial scheduling and conflicts |
| 5/9/2012 | .1 | e-mail to JCJ re: appeal and trial |
| 5/9/2012 | .1 | e-mail from Boring re: updated trial schedule |
| 5/9/2012 | .1 | Receive and review Court's order on reconsideration of MILs |
| 5/10/2012 | .1 | e-mail to expert Weiholdt re: visual displays |
| 5/10/2012 | .8 | Receive and review Court's order on reconsideration of SJ; d/w JCJ & JAK |
| 5/10/2012 | .1 | Receive and review motion to amend witness & exhibit list |
| 5/10/2012 | 6.5 | Trial Preparation: Opening Statement, Powerpoint; Witness Logistics and Strategy |
| 5/11/2012 | 10.5 | Trial Preparation: Opening Statement and Powerpoint; witness outlines |
| 5/12/2012 | 13 | Trial Preparation: Opening Statement and Powerpoint; file review and witness outlines |
| 5/13/2012 | 16 | Trial Preparation: Opening Statement, Witness Logistics |
| 5/14/2012 | 13 | Trial Day One; opening Statement, witness preparation, draft and finalize testimony outlines, review and organize exhibits for next day's witnesses |
| 5/15/2012 | 14 | Trial Day Two; witness preparation, draft and finalize testimony outlines, review and organize exhibits for next day's witnesses |
| 5/16/2012 | 12 | Trial Day Three; witness preparation, draft and finalize testimony outlines, review and organize exhibits for next day's witnesses |
| 5/17/2012 | 14 | Trial Day Four; witness preparation, draft and finalize testimony outlines, review and organize exhibits for next day's witnesses |
| 5/18/2012 | 10 | Trial Day Five |
| 5/19/2012 | 6.5 | Trial Preparation: File & Deposition Review; Witness Outlines; Prepare Exhibits |
| 5/20/2012 | 8.5 | Trial Preparation: File & Deposition Review; Witness Outlines; Prepare Exhibits |
| 5/21/2012 | 13 | Trial Day 6; witness preparation, draft and finalize testimony outlines, review and organize exhibits for next day's witnesses |
| 5/22/2012 | 14 | Trial Day 7; witness preparation, draft and finalize testimony outlines, review and organize exhibits for next day's witnesses |
| 5/23/2012 | 13 | Trial Day 8; witness preparation, draft and finalize testimony outlines, review and organize exhibits for next day's witnesses |
| 5/24/2012 | 10.5 | Trial Day 9 |
| 5/25/2012 | 3.5 | Trial Preparation: File & Deposition Review; Witness Outlines; Prepare Exhibits |
| 5/27/2012 | 12 | Trial Preparation: closing argument; prep for defense witnesses |
| 5/28/2012 | 14 | Trial Preparation: defense witnesses, closing argument, prepare memorandum re: reading of declaration to jury, jury instructions; proposed verdict form |
| 5/29/2012 | 15 | Trial Day 10; Prepare Closing Argument |
| 5/30/2012 | 5.5 | Trial Day 11 |
| 5/31/2012 | .7 | Courthouse for Juror Questions |

| 6/1/2012 | 1.5 | Courthouse for Jury Verdict |
|---|---|---|
| 6/5/2012 | 1.5 | Retrieve Exhibits from Courthouse |
| 6/7/2012 | 3.5 | Legal research & writing: plaintiffs' motion for attorneys' fees and costs, supporting materials |
| 6/14/2012 | 4.5 | Legal research & writing: plaintiffs' motion for attorneys' fees and costs, supporting materials |
| 6/14/2012 | .8 | Receive and review motion for JNV and motion for new trial |
| 6/15/2012 | 2.5 | Legal research & writing: review and finalize plaintiffs' motion for attorneys' fees and costs, supporting materials |
|  | 626.4 | TOTAL HOURS (through June 15, 2012) |

EXHIBIT B



EXHIBIT B

## 2011 BILLING SURVEY
### A SPECIAL REPORT

| Firm Name | Principal or Largest Office | Average full-time equivalent Attorneys* | Firmwide Average Billing Rate | Firmwide Median Billing Rate | Partner Billing Rate: High | Partner Billing Rate: Low | Partner Billing Rate: Average | Partner Billing Rate: Median | Associate Billing Rate: High | Associate Billing Rate: Low | Associate Billing Rate: Average |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Baker, Donelson, Bearman, Caldwell & Berkowitz | Memphis, Tenn. | 527 | $311 | $310 | $595 | $250 | $357 | $345 | $315 | $160 | $228 |
| Best Best & Krieger | Riverside, Calif. | 195 | $358 | $360 | $575 | $275 | $417 | $420 | $375 | $205 | $265 |
| Briggs and Morgan | Minneapolis | 185 | | | $625 | $325 | | | $305 | $230 | |
| Broad and Cassel | Orlando, Fla. | 160 | $377 | $350 | $575 | $295 | $435 | $395 | $350 | $180 | $265 |
| Bryan Cave | St. Louis | 908 | $475 | $460 | $795 | $375 | $565 | $553 | $540 | $200 | $356 |
| Butzel Long | Detroit | 176 | | | $700 | $325 | $440 | | $425 | $225 | $274 |
| Carlton Fields | Tampa, Fla. | 270 | $397 | $400 | $815 | $320 | $470 | $470 | $380 | $195 | $262 |

| Firm Name | Principal or Largest Office | Average full-time equivalent Attorneys[1] | Firmwide Average Billing Rate | Firmwide Median Billing Rate | Partner Billing Rate: High | Partner Billing Rate: Low | Partner Billing Rate: Average | Partner Billing Rate: Median | Associate Billing Rate: High | Associate Billing Rate: Low | Associate Billing Rate: Average |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kaye Scholer | New York | 425 | $661 | $665 | $1080 | $685 | $831 | $835 | $705 | $310 | $519 |
| Kelley Drye & Warren | New York | 321 | $474 | $400 | $925 | $480 | $634 | $645 | $595 | $275 | $425 |
| Knobbe, Martens, Olson & Bear | Irvine, Calif. | 268 | $439 | $415 | $735 | $415 | $525 | $500 | $495 | $295 | $346 |
| Lane Powell | Seattle | 180 | $405 | $425 | $645 | $340 | $460 | $450 | $360 | $225 | $295 |
| Lathrop & Gage | Kansas City, Mo. | 281 | $337 | $340 | $735 | $275 | $390 | $390 | $410 | $205 | $246 |
| Lewis, Rice & Fingersh | St. Louis | 162 | $275 | | $470 | $270 | | | $320 | $150 | |
| Lowenstein Sandler | Roseland, N.J. | 249 | $478 | $480 | $895 | $435 | $613 | $595 | $660 | $250 | $400 |
| Manatt, Phelps & Phillips | Los Angeles | 322 | $602 | $620 | $850 | $540 | $676 | $670 | $550 | $215 | $464 |
| McElroy, Deutsch, Mulvaney & Carpenter | Morristown, N.J. | 272 | $245 | $275 | $575 | $295 | $350 | $375 | $325 | $185 | $250 |

| Firm Name | Principal or Largest Office | Average full-time equivalent Attorneys[1] | Firmwide Average Billing Rate | Firmwide Median Billing Rate | Partner Billing Rate: High | Partner Billing Rate: Low | Partner Billing Rate: Average | Partner Billing Rate: Median | Associate Billing Rate: High | Associate Billing Rate: Low | Associate Billing Rate: Average |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nexsen Pruet | Columbia, S.C. | 178 | | | $550 | $235 | | | $265 | $170 | |
| Patton Boggs | Washington | 512 | $546 | $540 | $990 | $410 | $659 | $645 | $570 | $240 | $410 |
| Pepper Hamilton | Philadelphia | 459 | | | $825 | $380 | $557 | | $460 | $235 | $344 |
| Perkins Coie | Seattle | 693 | $462 | | $875 | $285 | $550 | $545 | $590 | $215 | $368 |
| Phelps Dunbar | New Orleans | 280 | $236 | $225 | $465 | $190 | $281 | $275 | $245 | $150 | $189 |
| Polsinelli Shughart | Kansas City, Mo. | 466 | | | $630 | $275 | | | $335 | $205 | |
| Saul Ewing | Philadelphia | 220 | $431 | $450 | $750 | $350 | $502 | $490 | $495 | $245 | $326 |
| Schulte Roth & Zabel | New York | 406 | $615 | $630 | $935 | $770 | $846 | $840 | $675 | $285 | $608 |
| Seyfarth Shaw | Chicago | 702 | $437 | $425 | $790 | $355 | $528 | $525 | $505 | $225 | $341 |
| Sheppard, Mullin, Richter & Hampton | Los Angeles | 465 | | | $860 | $505 | | | $635 | $275 | |



EXHIBIT C

## Contact Information

Nathan Paul ("Nate") Roberts
████████████████████
Tacoma, WA 98402

Connelly Law Offices
2301 North 30th Street
Tacoma, WA 98403

(253) 593-5100 Main
(253) 593-8363 Direct
(253)████████Cell
nroberts@connelly-law.com

## Education

Seattle University School of Law, J.D., *magna cum laude*, May 2008

Law Clerk Extern to The Honorable Ronald B. Leighton, U.S. District Court, Western District of Washington, 2008

University of Washington, B.A., Business Administration, *cum laude*, June 2004

## Licensure

Admitted to Practice Law in Washington State Courts, WSBA #40457, 2008; U.S. District Court for the Western District of Washington, 2008; U.S. Court of Appeals for the Ninth Circuit, 2011

## Employment History

Connelly Law Offices, Tacoma, WA, 2006 to Present
        Trial Attorney, 2008 – present; Summer Associate, June 2006 – December 2007

## Representative Cases

*Jang v. United States of America*, 2012 WL 750516 (W.D.Wash.)
- represented Korean immigrant injured by delay in diagnosis and treatment of spinal epidural hematoma ($1.5 million settlement)

Nathan P. Roberts
Page - 2 of 3

*Toney v. State of Washington & Maxim Healthcare*, 2012 WL 1207174 (Wash.Super.)
- represented prison inmate who attempted suicide following failure to assess and treat psychiatric disorder ($4.25 million settlement)

*Philichi v. United States of America*, 2011 WL 7305917 (W.D.Wash.)
- represented 20-year-old man who lost use of his dominant right hand following failure to diagnose compartment syndrome ($3.9 million verdict)

*Bloedow v. King County*, 2011 WL 3366533 (Wash.Super.)
- represented woman who suffered traumatic brain injury as a result of bus-pedestrian collision ($4.5 million settlement)

*Hayward v. MultiCare Health System, Inc., et al.*, 2010 WL 5691874 (Wash.Super.)
- represented family of 29-year-old mother of three who was killed by medical malpractice ($4.1 million settlement)

*Washburn v. City of Federal Way*, 2010 WL 6600781(Wash.Super.)
- represented family and estate of domestic violence victim who was killed after police failed to enforce protective order ($1.1 million verdict)

*Fisher v. United States of America*, 2010 WL 5822691 (W.D. Wash.)
- represented widow and children of U.S. Navy veteran who was killed by negligence of federal employee ($1.9 million verdict)

*M.B.H. v. State of Washington*, 2010 WL 3397271 (Wash.Super.)
- represented developmentally delayed teen who was sexually abused after State ignored teen's warnings ($765,000 settlement)

*Dowe v. Community Psychiatric Clinic*, 2009 WL 4668682 (Wash.Super.)
- represented woman who was stabbed and blinded by improperly treated psychiatric patient ($5.5 million settlement)


## MEMBERSHIPS & ACTIVITIES

- Trustee & President-Elect, Tacoma-Pierce County Bar Association, Young Lawyers Division
- Associate Editor, *Trial News*
- EAGLE Member, Washington State Association for Justice


## PUBLICATIONS & PRESENTATIONS

1. Roberts, N., *The Ultimate Defendant: Taking on the United States of America under the Federal Tort Claims Act*, Trial News (May 2012)

Nathan P. Roberts
Page - 3 of 3

2. *Insurance Fair Conduct Act Litigation Techniques: Make Them Pay*, Washington State Association for Justice 34th Annual Insurance Law Seminar, Spokane, WA & Tacoma, WA (January 26-27, 2012)

3. Roberts, N., *Reflections on Appeal: A look back at 2011's appellate victories and losses for victims of medical negligence*, Trial News (January 2012)

4. *Medical Malpractice Case Law Update*, Washington State Association for Justice Annual Winter Conference, Seattle, WA (December 8, 2011)

5. *Divide and Conquer with Adcox – Maximizing Global Recoveries Against Multiple Defendants*, Tacoma-Pierce County Bar Association "Tort Law II" Seminar, Fircrest, WA (October 22, 2010)

EXHIBIT D



EXHIBIT D

**U.S. Department of Justice**
Office of Justice Programs



## Bureau of Justice Statistics
# Special Report

August 2008, NCJ 222989

# Civil Rights Complaints in U.S. District Courts, 1990-2006

Tracey Kyckelhahn and Thomas H. Cohen, Ph.D.
*BJS Statisticians*

After the expansion of civil rights laws in the early 1990s, the number of civil rights cases filed in U.S. district courts increased from 18,922 in 1990 to 43,278 in 1997. Civil rights filings stabilized in the late 1990s and early 2000s and subsequently declined. From 2003 through 2006, civil rights filings in federal district courts decreased by almost 20%. During this period of growth and stabilization in civil rights litigation, the percent of civil rights claims concluded by trial declined from 8% in 1990 to 3% in 2006.

Other major findings in this report include—

- Civil rights cases in U.S. district courts declined from a high of 17% of all federal civil cases in 1998 to 13% in 2006.

- From 1990 through 2006, about 9 out of 10 civil rights filings involved disputes between private parties.

- Jury trials became more common than bench trials during the 17-year period covered in this report (figure 1).

- ==The percent of plaintiffs who won at trial between 1990 and 2006 remained steady at about a third.==

- From 2000 through 2006, the median damage award for plaintiffs who won in civil rights trials ranged from $114,000 to $154,500.

- The combined 2000 through 2006 median jury award was $146,125; the median bench award was $71,500.

This report addresses trends in civil rights litigation in federal district courts and the outcomes of civil rights disputes. Information is presented on civil rights complaints filed and terminated in U.S. district courts concerning employment, housing and accommodations, welfare, voting rights, and other types of discrimination. The report also focuses on



**Civil rights jury trials increasingly more common than bench trials in U.S. district courts, 1990-2006**

Number of civil rights cases concluded by jury or bench trial

Note: Directed verdicts not included.

Figure 1

civil rights cases concluded by trial and examines who wins in civil rights trials and the damages awarded to plaintiff winners.

A civil rights claim arises when an individual or group asserts they have been discriminated against on the basis of their race, sex, religion, age, physical limitation, or previous condition of servitude. Most litigants in civil rights disputes are required to seek administrative remedies involving federal agencies such as the Equal Employment Opportunity Commission (EEOC), in the case of employment discrimination, or the U.S. Department of Housing and Urban Development (HUD), in the case of housing discrimination. Litigants not satisfied with these administrative outcomes can file a civil rights lawsuit in the federal courts to seek monetary or injunctive relief.

This study does not cover civil rights grievances filed, investigated, and resolved through administrative channels and agencies that enforce various federal civil rights discrimination laws such as the EEOC or HUD. This report also does not examine civil rights litigation in state courts. Because of limited data this study does not report the number of cases filed or terminated under specific titles and sections of the U.S. code. (See *Methodology*).

### Civil rights laws underwent a major expansion during the early 1990s

Civil rights laws underwent a major expansion during the early 1990s with the passage of the Americans for Disabilities Act of 1990 and the Civil Rights Act of 1991. The Civil Rights Act of 1991 amended several federal employment discrimination laws including Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1871, the Age Discrimination in Employment Act of 1973, the Rehabilitation Act of 1973, and the Americans with Disabilities Act of 1990. It also made available compensatory and punitive damages in certain discrimination claims, permitted jury trials for plaintiffs seeking monetary damages, and overturned several U.S. Supreme Court decisions, effectively broadening the scope of employment practices considered discriminatory.[*]

---

[*]*Wards Cove Packing Co. v. Atonio*, 109 S. Ct. 2115 (1989); *Patterson v. McLean Credit Union*, 109 S. Ct. 2363 (1989); *Martin v. Wilks*, 109 S. Ct. 2180 (1989); *Price Waterhouse v. Hopkins*, 109 S. Ct. 1775 (1989); *Lorance v. At&T Technologies*, 109 S. Ct. 2261 (1989); *Equal Employment Opportunity Commission v. Aramco*, 111 S. Ct. 1227 (1991); *West Virginia University Hospitals v. Casey*, 111 S. Ct. 1138 (1991).

### Civil rights cases represent declining proportion of federal civil caseloads

Throughout the 1990s, civil rights claims accounted for an increasing proportion of federal civil caseloads in U.S. district courts. As a percent of all federal civil filings, civil rights filings increased from 9% in 1990 to nearly 17% in 1998 (figure 2). Civil rights filings stabilized at about 16% of federal civil caseloads from 1999 through 2003 and subsequently declined. By 2006, 13% of federal civil cases involved civil rights issues.

### Employment discrimination accounted for about half of all civil rights filings in U.S. district courts from 1990 to 2006

*Employment discrimination*

Civil rights in an employment setting are violated when employers discriminate with regard to hiring, promotion or discharge practices, compensation, conditions and privileges of employment, or denial of employment opportunities (42 USC § 2000E-2; 29 USC §§ 621-634).

Throughout the 17-year period covered by this report, employment discrimination accounted for about half of all civil rights filings in U.S. district courts (figure 3). Civil rights cases involving employment discrimination demonstrated the same trend as overall civil rights filings with substantial increases in the 1990s. In 1990, 8,413 cases were filed with the number peaking at 23,796 in 1997. Employment discrimination filings stabilized between 1997 and 2004, and declined to 14,353 in 2006.



**Since 2003, civil rights cases have represented a declining proportion of federal civil caseloads**

Civil rights complaints as percentage of federal civil caseloads

*Figure 2*



**Civil rights cases involving employment discrimination demonstrated the same trend as civil rights cases overall, 1990-2006**

Number of civil rights cases filed in U.S. district courts

*Figure 3*

*Housing and accommodations*

Pursuant to the Fair Housing Act of 1972 and amendments in 1988, discrimination is prohibited in the rental or lease of apartments, the sale of housing, and the financing of housing because of an individual's race, color, religion, sex, national origin, disability, or families with children. Complaints may also include discrimination in public accommodations such as restaurants or hotels (42 USC §§ 3601-3619; 15 USC § 1691).

Housing and accommodation civil rights claims represented 2% of all civil rights filings in 2006. These cases followed the same general trend as employment discrimination cases. There were 341 housing and accommodations related filings in 1990, a high of 1,315 filings in 2003, and a decline to 643 filings in 2006 (figure 4).

*Welfare and voting*

A person's civil rights regarding welfare issues are violated when social security entitlements are denied based on an individual's race, color, religion, sex, or national origin. Violations of a person's civil rights related to welfare issues also include the denial of benefit income (e.g., annuity, pension, retirement, or disability benefit including veterans' compensation), the denial of rehabilitation and other services for families with dependent children, and the denial of benefits for individuals who are elderly, blind, or disabled, or whose income and resources are insufficient to meet the costs of necessary medical services.

Voting rights are violated when redistricting plans or election methods prevent minority voters from electing candidates of their choice. Situations related to voting rights violations include preventing voters from casting their ballots by denying them assistance or preventing voters from receiving assistance from a person of their choice. Failure to provide voting information and assistance in the language used by a substantial number of voters in a jurisdiction or failure to provide access to polling places for handicapped or elderly individuals are also situations related to voting rights violations (42 USC §§ 1973-1973e).

Civil rights cases involving welfare and voting issues did not follow the same general trend as housing and employment discrimination cases. Lawsuits involving welfare discrimination steadily declined from 129 to 56 cases between 1990 and 2006. In comparison, complaints alleging viola-

tions of voting rights peaked in 1992 and rose again in 2002. The increase in voting rights cases for these specific years was most likely the result of redistricting challenges following the 1990 and 2000 censuses. By 2006, the number of voting rights lawsuits had declined to about 150 cases.

*Other civil rights complaints*

Available data on the statutory provisions litigated suggest that filings in the other civil rights complaints category dealt with diverse issues such as the civil rights of handicapped children, education of children and adults with disabilities, as well as vocational disabilities and rehabilitation discrimination.

Civil rights filings that were either unidentifiable or were in a category other than housing and accommodations, welfare, voting, and employment comprised about the same percentage of filings as those in the employment discrimination category. In 1990, 9,909 civil rights complaints listed as "other civil rights" were filed in U.S. district courts. From the mid-1990s through 2006, "other" filings remained constant at about 18,000 per year.



**Housing, voting rights, and welfare claims filed in U.S. district courts, 1990-2006**

Number of housing, voting, and welfare claims filed in U.S. district courts

*Figure 4*

## Most civil rights complaints involved private parties

From 1990 to 2006, around 9 in 10 civil rights filings involved disputes between private parties (table 1). The majority of private cases involved questions over interpretation and application of the U.S. Constitution, acts of Congress, or treaties ("federal question" jurisdiction) from parties in the same state.

"Diversity of citizenship" cases, which consisted of private parties from different states or parties of a state and citizens, corporations, or subjects of a foreign country, were a small percentage (under four percent) of private civil rights lawsuits filed during this period.

## Number of private civil rights lawsuits declined between 2004 and 2006

The number of civil rights lawsuits filed in U.S. district courts increased from 16,310 in 1990 to a peak of 40,361 in 1997 (not shown in table). Between 2004 and 2006 the number of filings declined 19%, from 37,374 to 30,405 (table 2). All categories of civil rights filings exhibited a decline over this two-year period.

## U.S. government more likely to be a defendant than a plaintiff

U.S. district courts exercise jurisdiction in civil actions that are either initiated by the U.S. government (U.S. plaintiff), or are brought against the U.S. government (U.S. defendant) for alleged civil rights violations. (28 USC § 1345; 28 USC § 1346).

Of the approximately 10% of civil rights filings that involved the U.S. government, cases in which the government was the defendant accounted for around 70% to 80% of civil rights filings from 1990 to 2006 (table 3). In 2006, 1,961 civil rights complaints were filed against the U.S. government, representing a 17% decline in the number of filings since 2000. As with overall case filings, about an equal percentage of employment discrimination and "other" cases involving civil rights violations were filed from 1990 to 2006, representing the majority of cases overall.

In comparison to filings involving two private parties or the U.S. government as the defendant, complaints filed by the U.S. government as the plaintiff did not show a clear trend between 1990 and 2006. Filings ranged from a high of 816

in 1991 to a low of 486 in 1996 (not shown in table). Since 2000, the number of civil rights cases filed by the U.S. government has declined by 21%. Cases in the "other" category accounted for a much smaller percentage of cases filed by the U.S. government, compared to private party and U.S. as defendant filings.

Table 1. Federal subject matter jurisdiction of civil rights complaints filed in U.S. district courts, 1990-2006

| Year | Total cases filed | Total percent | Federal subject matter jurisdiction | | Private cases | |
|---|---|---|---|---|---|---|
| | | | Cases involving the U.S. government as— | | | |
| | | | Plaintiff | Defendant | Federal question | Diversity of citizenship |
| 1990 | 18,793 | 100% | 4.0 | 9.2 | 86.8 | -- |
| 1995 | 36,600 | 100% | 1.8 | 6.4 | 91.7 | -- |
| 2000 | 40,908 | 100% | 1.5 | 5.8 | 89.6 | 3.1 |
| 2001 | 40,910 | 100% | 1.7 | 5.7 | 89.7 | 2.9 |
| 2002 | 40,420 | 100% | 1.6 | 5.9 | 89.5 | 3.0 |
| 2003 | 40,516 | 100% | 1.5 | 5.7 | 90.1 | 2.7 |
| 2004 | 40,239 | 100% | 1.5 | 5.6 | 91.6 | 1.3 |
| 2005 | 36,096 | 100% | 1.5 | 6.0 | 91.8 | 0.7 |
| 2006 | 32,865 | 100% | 1.5 | 6.0 | 92.1 | 0.3 |

Note: Does not include prisoner petitions.
-- No cases recorded.
Source: Annual Report of the Director. Washington, D.C.: Administrative Office of the U.S. Courts (table C-2).

Table 2. Civil rights complaints involving a private suit filed in U.S. district courts, by type, 1990-2006

| Year | Total number | Type of civil rights complaints involving private suits | | | | |
|---|---|---|---|---|---|---|
| | | Employment | Voting | Housing | Welfare | Other* |
| 1990 | 16,310 | 6,936 | 114 | 284 | 107 | 8,869 |
| 1995 | 33,574 | 17,374 | 188 | 582 | 103 | 15,327 |
| 2000 | 37,888 | 19,245 | 141 | 1,202 | 73 | 17,227 |
| 2001 | 37,878 | 19,371 | 173 | 1,151 | 53 | 17,130 |
| 2002 | 37,391 | 19,225 | 209 | 1,231 | 61 | 16,665 |
| 2003 | 37,602 | 18,768 | 139 | 1,261 | 63 | 17,371 |
| 2004 | 37,374 | 18,040 | 152 | 1,169 | 54 | 17,959 |
| 2005 | 33,390 | 15,344 | 143 | 821 | 48 | 17,034 |
| 2006 | 30,405 | 13,042 | 122 | 593 | 49 | 16,599 |

*Types of civil rights cases within the "other" category cannot be distinguished.
Source: Annual Report of the Director. Washington, D.C.: Administrative Office of the U.S. Courts (table C-2).

## Percent of civil rights cases concluded by trial declined from 8% in 1990 to 3% in 2006

Of the 17,985 civil rights complaints disposed in 1990, 8% were terminated by trial, while in 2006, 3% of the 33,108 civil rights claims concluded in federal courts ended in a trial (table 4). Other cases concluded by a judgment remained steady during this period at about a quarter of terminations. This category of terminations included judgment by defaults, consent, motions before trial, and judgments through formal arbitration procedures adopted by the court.

The percentage of civil rights cases dismissed from U.S. district courts increased from 66% in 1990 to 75% in 2003, and decreased slightly to 72% in 2006. Civil rights dismissals followed the same trend as out of court settlements and voluntary dismissals. Out of court settlements rose from 31% to 39% of all civil rights dispositions between 1990 and 2003. Voluntary dismissals increased from 8% to 13% of all civil rights dispositions between 1990 to 2003. Since 2003, both the settlement and voluntary disposition categories have declined slightly. Settlements accounted for 37% and voluntary dismissals accounted for 11% of civil rights dispositions by 2006.

The proportion of civil rights dismissals which occurred due to lack of jurisdiction declined from 8% in 1990 to 2% in 2006. From 1990 to 2006, civil rights cases dismissed because of want of prosecution remained at about 4%.

In 1990, welfare civil rights cases (3%) were the least likely to go to trial while employment discrimination cases (9%) were the most likely to reach trial (table 5). In 2006 the percent of civil rights cases ending in trial exhibited a smaller range across all categories, varying between two and three percent.

---

**Table 3. Civil rights complaints with the U.S. government involved as plaintiff or defendant filed in U.S. district courts, by type, 1990-2006**

| | | U.S. government as plaintiff | | | | | | U.S. government as defendant | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | Total | Employment | Voting | Housing | Welfare | Other* | Total | Employment | Voting | Housing | Welfare | Other* |
| 1990 | 747 | 601 | 10 | 37 | 5 | 94 | 1,736 | 876 | 6 | 20 | 17 | 817 |
| 1995 | 668 | 410 | 8 | 115 | -- | 135 | 2,358 | 1,275 | 12 | 38 | 13 | 1,020 |
| 2000 | 633 | 425 | 16 | 50 | -- | 142 | 2,387 | 1,362 | 10 | 32 | 7 | 976 |
| 2001 | 710 | 516 | 7 | 55 | 1 | 131 | 2,322 | 1,270 | 15 | 43 | 7 | 987 |
| 2002 | 649 | 464 | 8 | 55 | 1 | 121 | 2,380 | 1,266 | 17 | 27 | 9 | 1,061 |
| 2003 | 599 | 445 | 3 | 34 | -- | 117 | 2,315 | 1,294 | 5 | 20 | 2 | 994 |
| 2004 | 603 | 435 | 12 | 35 | 1 | 120 | 2,262 | 1,271 | 9 | 18 | 6 | 958 |
| 2005 | 534 | 420 | 8 | 42 | -- | 64 | 2,172 | 1,166 | 15 | 22 | 6 | 963 |
| 2006 | 499 | 373 | 16 | 32 | -- | 78 | 1,961 | 938 | 12 | 18 | 7 | 986 |

*Types of civil rights cases within the "other" category cannot be distinguished.
-- No cases recorded.
Source: Annual Report of the Director. Washington, D.C.: Administrative Office of the U.S. Courts (table C-2).

---

**Table 4. Civil rights cases concluded in U.S. district courts, by disposition, 1990-2006**

| | | Percent of cases disposed | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | Dismissed | | | | | | Judgment | | |
| Year | Number of complaints disposed[a] | Total | Settled | Voluntary | Lack of jurisdiction | Want of prosecution | Other | Total | Trial[b] | Other[c] |
| 1990 | 17,985 | 66.2% | 30.7% | 8.1% | 8.3% | 5.0% | 14.1% | 33.8% | 7.6% | 26.2% |
| 1995 | 30,175 | 69.4 | 33.4 | 11.8 | 2.0 | 4.1 | 18.1 | 30.6 | 6.0 | 24.6 |
| 2000 | 39,941 | 72.3 | 37.6 | 11.9 | 1.7 | 4.1 | 17.0 | 27.7 | 4.1 | 23.6 |
| 2001 | 38,612 | 73.9 | 38.9 | 12.2 | 1.8 | 4.0 | 17.0 | 26.1 | 3.8 | 22.3 |
| 2002 | 38,551 | 74.2 | 37.8 | 12.7 | 1.8 | 4.0 | 17.8 | 25.8 | 3.6 | 22.3 |
| 2003 | 37,624 | 74.7 | 38.5 | 12.8 | 1.9 | 4.0 | 17.5 | 25.3 | 3.4 | 22.0 |
| 2004 | 37,407 | 73.8 | 37.6 | 12.0 | 1.8 | 4.0 | 18.5 | 26.2 | 2.9 | 23.3 |
| 2005 | 36,929 | 73.6 | 38.1 | 11.8 | 1.7 | 4.1 | 17.9 | 26.4 | 3.0 | 23.5 |
| 2006 | 33,108 | 72.0 | 37.0 | 11.4 | 1.7 | 4.4 | 17.6 | 28.0 | 3.0 | 25.0 |

Note: Does not include prisoner petitions. Percentages may not sum to total due to rounding.
[a]Excludes transfers, remands, and statistical closures.
[b]Trial includes cases disposed of by jury trial, bench trial, and directed verdict. In some cases, the parties may have settled before the completion of the trial.
[c]Includes judgments by default, consent, a motion before trial, judgment of arbitrator or by some other final judgment method.
Source: Administrative Office of the U.S. Courts, Civil Master File.

**Jury trials increased as a percent of all trials**

A jury trial is held before a jury—a selected body of persons sworn to give their verdict according to the evidence—and presided over by a judge. A bench trial is held in the absence of a jury and decided by a judge.

Jury and bench trials each accounted for about half of all civil rights trials concluded in federal district courts in 1990 (figure 1). By 2006, jury trials accounted for 87% of civil rights trials. The growth of jury trials can be partially attributed to Title VII of the Civil Rights Act of 1991, which allowed jury trials when a plaintiff sought punitive or compensatory damages in employment discrimination cases.

The percentage of employment discrimination trials involving a jury increased from 40% in 1990 to 86% in 2006 (not shown in a table). The percentage of other civil rights cases disposed of by jury trial increased from 66% in 1990 to 86% in 2006.

**On average, plaintiffs won a third of civil rights cases from 1990 to 2006; median damage awards ranged from $114,000 to $154,500**

While the percent of civil rights cases terminated by trial declined, about a third of plaintiffs won their case at trial from 1990 to 2006 (table 6). The percent of plaintiff winners who received monetary damages declined from 83% in 1990 to 79% in 2006.

The estimated median damages awarded to plaintiffs showed no discernible pattern during the period covered by this report. Since 1990 the median damage awards have ranged from $114,000 in 2001 to $154,500 in 2005. In 2006 the median damages awarded to plaintiffs prevailing in civil rights trials was $150,000.

Civil rights complaints brought under Title VII of the Civil Rights Act of 1964 or the Americans with Disabilities Act of 1990 typically involve a compensatory award for economic damages. Damages may include losses associated with back pay, interest on back pay, lost benefits, attorney fees, some litigation costs, or other financial losses that the court deems appropriate as a result of the defendant's conduct.

The Civil Rights Act of 1991 extended the type of damages that could be sought by plaintiffs by allowing claims for non-economic compensatory damages and punitive damages. Non-economic compensatory damages reimburse the plaintiff for losses such as emotional pain, suffering, inconvenience, mental anguish, future monetary losses, as well as loss of enjoyment of life. Punitive damages are intended to punish a defendant who acted with recklessness, malice, or deceit, and can be awarded in addition to compensatory damages.

The Civil Rights Act of 1991 placed a cap on the total amount of compensatory and punitive damages that can be awarded, based on the size of the employer. The cap on awards does not apply to complaints of ethnic or racial discrimination.

Award amounts include both compensatory and punitive damages. For this report, the types of award amounts cannot be distinguished in the data. Monetary information presented in this report is for civil rights cases in which damages were awarded. Excluded from this analysis were civil rights complaints in which only court costs and/or attorneys fees were awarded.

**Table 5. Disposition of civil rights complaints concluded by trial by case type, in U.S. district courts, 1990 and 2006**

| | 1990 | | 2006 | |
|---|---|---|---|---|
| Case type | Number of complaints disposed | Percent concluded by trial* | Number of complaints disposed | Percent concluded by trial* |
| Employment | 8,206 | 8.7% | 15,950 | 3.2% |
| Housing | 290 | 6.6 | 718 | 2.2 |
| Voting | 125 | 5.6 | 118 | 2.5 |
| Welfare | 120 | 3.3 | 41 | 2.4 |
| Other | 9,244 | 6.8 | 16,281 | 2.8 |

Source: Administrative Office of the U.S. Courts, Civil Master File.
*Includes jury trials, bench trials, and directed verdicts.

**Table 6. Plaintiff winners and award amounts in civil rights complaints concluded by trial in U.S. district courts, 1990-2006**

| | | | Monetary awards | |
|---|---|---|---|---|
| Year | Number of cases terminated by trial[a] | Percent plaintiff winners[b] | Percent of plaintiff winners receiving monetary awards | Estimated median awards[b] |
| 1990 | 1,321 | 29.0% | 82.8% | ... |
| 1995 | 1,727 | 27.2 | 81.5 | $128,000 |
| 2000 | 1,600 | 34.1 | 76.3 | 152,100 |
| 2001 | 1,411 | 35.4 | 79.2 | 114,000 |
| 2002 | 1,314 | 32.3 | 76.7 | 120,400 |
| 2003 | 1,183 | 31.0 | 76.0 | 129,250 |
| 2004 | 951 | 30.8 | 76.8 | 128,400 |
| 2005 | 830 | 31.9 | 73.6 | 154,500 |
| 2006 | 717 | 30.8 | 78.7 | 150,000 |

... Not reported for the year 1990.
[a]Includes jury trials, bench trials, and directed verdicts.
[b]Civil rights trials in which both the plaintiff and the defendant won were excluded from the plaintiff winner and award calculation. Awards adjusted for inflation to 2006 dollars.
Source: Administrative Office of the U.S. Courts, Civil Master File.

## Jury awards higher than bench awards

A comparison of civil rights bench and jury trials necessitated combining trial data for the years 2000 through 2006 because of the limited number of bench trials concluded during this time period. The rate in which plaintiffs prevailed at trial did not differ appreciably between jury and bench trials. Plaintiffs won in about a third of trials litigated before either a jury or judge (table 7). Bench trials awarded monetary damages to 59% of plaintiff winners and jury trials awarded monetary damages to 81% of plaintiff winners from 2000 to 2006.

Cases disposed of by jury trial had a median award of $146,125. In comparison, cases disposed of by bench trial had a median award of $71,500. The 25th percentile for jury trials was $39,925 and the 75th percentile was $380,188. For bench trials, the 25th percentile was $17,880 and the 75th percentile was $292,500 (percentile data not shown in table).

## Employment discrimination plaintiff winners more likely to receive a monetary award

In all civil rights trials concluded between 2000 and 2006, employment discrimination plaintiff winners (81%) were most likely to receive a monetary award, followed by housing cases (74%), and other civil rights cases (72%).

Employment discrimination cases received a median award of $158,460 for cases concluded by trial between 2000 and 2006. The 25th percentile for employment discrimination cases was $52,065 and the 75th percentile was $374,265 (percentile data not shown in table). The median damage award for civil rights trials in the "other civil rights" category was $100,000. For other civil rights cases, the 25th percentile was $21,400 and the 75th percentile was $351,000.

## Case processing time constant between 1990 and 2006

The median number of months from filing to disposition for civil rights cases terminated in federal district courts varied slightly between 9 and 11 months from 1990 to 2006 (table 8). Employment discrimination cases generally had the longest median case processing time, varying between 11 and 13 months (not shown in table).

**Table 7. Plaintiff winners and median awards for civil rights cases concluded by trial or case type in U.S. district courts, 2000-2006**

| | | | Monetary awards | |
|---|---|---|---|---|
| Trial or case type | Number of cases terminated by trial[a] | Percent plaintiff winners[b] | Percent of plaintiff winners receiving monetary awards | Median awards[b] |
| **Trial type** | | | | |
| Jury | 5,760 | 33.9% | 80.7% | $146,125 |
| Bench | 1,218 | 33.3 | 59.0 | 71,500 |
| **Case type[c]** | | | | |
| Employment | 3,809 | 36.7% | 80.9% | $158,460 |
| Housing | 115 | 42.6 | 73.5 | ... |
| Other | 3,013 | 29.7 | 71.6 | 100,000 |

Note: Civil rights trial data combine the years 2000 through 2006.
[a]Includes jury trials, bench trials, and directed verdicts.
[b]Civil rights trials in which both the plaintiff and the defendant won were excluded from the plaintiff winner and award calculation. Awards adjusted for inflation to 2006 dollars.
[c]Voting rights and welfare cases were too few to provide reliable data.
...Too few cases to calculate median award.
Source: Administrative Office of the U.S. Courts, Civil Master File.

**Table 8. Number of months from filing of complaint to disposition among civil rights cases concluded in U.S. district courts, 1990-2006**

| | | Months | |
|---|---|---|---|
| Year | Number disposed | Median | Mean |
| 1990 | 17,985 | 11.0 | 15.1 |
| 1995 | 30,175 | 9.8 | 12.6 |
| 2000 | 39,941 | 10.9 | 13.4 |
| 2001 | 38,612 | 10.6 | 13.0 |
| 2002 | 38,551 | 10.6 | 13.0 |
| 2003 | 37,624 | 10.6 | 13.3 |
| 2004 | 37,407 | 10.5 | 13.1 |
| 2005 | 36,929 | 10.7 | 13.2 |
| 2006 | 33,108 | 11.0 | 13.6 |

Source: Administrative Office of the U.S. Courts, Civil Master File.

**Prisoner petitions in state and federal courts, 1990-2006**

Various legislation and U.S. Supreme Court cases have allowed state and federal inmates to sue for violations of certain constitutional rights.

• In 1941, prisoners were permitted to file claims against state officials for violations of constitutional rights, including the right to religious freedom, freedom of speech and association, due process, racial discrimination, and cruel and unusual punishment. (*Ex parte Hull*, 312 U.S. 546 (1941))

• The U.S. Supreme Court granted inmates the right to bring lawsuits against federal officials who violate their constitutional rights in 1963. (*United States v. Muniz*, 374 U.S. 150 (1963))

From 1990 to 1996, prisoner petitions by federal inmates varied from about 900 to 1,200, with a high of 1,219 in 1996. Petitions from state inmates increased from 24,843 to 39,996. Total filings showed a steady increase from 25,992 in 1990 to 41,215 in 1996.

Following the passage of the Prison Litigation Reform Act of 1996, which restricted the rights of inmates to sue in federal court, complaints filed by federal (20%) and state (31%) inmates declined in 1997.

From 1999 to 2006, the number of civil rights prison petitions filed in U.S. district courts stabilized at about 24,500 cases filed on average per year. Prison petitions involving state inmates declined by 7% from 24,732 filings in 1999 to 23,122 filings in 2006. In comparison, federal inmate prison petitions increased from 962 filings in 1999 to 1,334 filings in 2004 and declined to 1,116 filings by 2006.

**State prison petitions declined after the Prison Litigation Reform Act of 1996**

Number of prisoner petitions filed in U.S. district courts



Note: Includes prisoner petitions involving civil rights and prison condition claims.

*Figure 5*

**Federal prisoner petitions filed in U.S. district courts ranged from a low of 910 in 1992 to a high of 1,334 in 2004**

Number of federal prisoner petitions filed in U.S. district courts



Note: Includes prisoner petitions involving civil rights and prison condition claims.

*Figure 6*

## Methodology

The primary source of data presented in this report is the Administrative Office of the U.S. Courts (AOUSC) Civil Master File. Data tabulations were prepared from the BJS staff analysis of source agency data sets. The federal civil rights categories used in this report were based on the codes established by the Administrative Office of the United States Courts. Case level information was provided by individual U.S. district courts that submitted data to the AOUSC. No detailed information was available on civil rights cases coded as "other". For civil rights cases that involved filing more than one action, the AOUSC instructed the plaintiff's attorney to select the most definitive code if the cause fit more than one nature of the lawsuit. It was the first nature of suit code that was used in the analysis for this report.

For civil rights complaints where more than one basis of jurisdiction applied, the case was coded according to the highest priority jurisdiction. Cases in which the U.S. government as plaintiff have the highest priority, followed by the U.S. government as defendant, and federal questions.

Calculations pertaining to trial winners and their award amounts were based on cases in which the winner and award amount were known and did not include instances where both parties won the case in part. Differences between known amounts and unknown amounts were not quantifiable.

The percent of cases concluded by jury trial, bench trial, and directed verdict was calculated using the disposition variable available in the AOUSC data (per the recommendation of the AOUSC). Because a previous BJS report used the procedural progress variable, the percents and number of cases may vary slightly between reports.

Although the courts record the title and section of the U.S. code for each case, this data field is not required by the AOUSC Statistics Division. It is not recommended for statistical analysis. For a more detailed explanation of the difficulties associated with the title and section fields of the AOUSC civil file, see the Report to the Subcommittee on Judicial Statistics on "Increase in Civil Rights Filings", prepared by the Analytical Services Office of AOUSC.

*Fiscal years*

The AOUSC reports on federal caseloads by fiscal year rather than calendar year. The period covered by a fiscal year changed in 1992. Prior to 1992 the fiscal year started on July 1 and ended on June 30 of the next year. The change in 1992 resulted in the fiscal year beginning on October 1 and ending on September 30.

Earlier BJS reports on civil rights cases terminated in U.S. district courts were not modified to reflect the current definition. This report modifies slightly the findings of those earlier BJS reports. Data for fiscal years 1990 to 1992 use October 1 through September 30 as the fiscal year.

For a discussion of findings from earlier BJS studies on Civil Rights litigation in U.S. district courts, see *Civil Rights Complaints in U.S. District Courts, 1990-98* (NCJ 173427) at <http://www.ojp.usdoj.gov/bjs/abstract/crcusdc.htm> and *Civil Rights Complaints in U.S. District Courts, 2000* (NCJ 193979) at <http://www.ojp.usdoj.gov/bjs/abstract/crcus00.htm>.

*Damage awards*

Damage award amounts are presented as estimates limited by data coverage and quality issues. For further information about award variables see the AOUSC codebook at the National Archive of Criminal Justice Data <http://www.icpsr.umich.edu/NACJD/index. html>; the codebook is archived with studies 4026 and 4059.

## Selected federal civil rights statutes

### Employment

*The Civil Rights Acts of 1866 and 1871* were established to enforce the 13th, 14th, and 15th amendments to the U.S. Constitution following the U.S. Civil War (1861-1865). The 1866 act prohibits racial discrimination in the making and enforcement of contracts among public and private employers. The 1871 act deals with civil rights violations by government entities. The civil rights acts have been increasingly used in employment discrimination cases.

*The Equal Pay Act of 1963* requires employers to pay men and women equal pay for equal working conditions.

*Title VII of the Civil Rights Act of 1964* prohibits employers with 15 employees or more from discriminating on the basis of race, color, religion, sex, or national origin.

*The Age Discrimination in Employment Act of 1967* prohibits discrimination on the basis of age against persons 40 years of age or older. This act applies to employers with 20 employees or more. This Act was amended by the *Older Workers Benefit Protection Act* in 1990 to ensure that older workers have complete and accurate information about their benefits and are not pressured into waiving their rights under the Age Discrimination in Employment Act (ADEA).

*The Rehabilitation Act of 1973* prohibits government contractors with contracts of $2,500 or more from discriminating against individuals with physical or mental handicaps. Government contracts pursuant to Executive Order 11246 must contain an equal opportunity clause and must develop and maintain an affirmative action plan. Vietnam veterans may benefit from affirmative action plans in government contracts under the *Vietnam Veterans Readjustment Assistance Act of 1974,* and the employment of aliens is dealt with in the *Immigration Reform and Control Act.*

*The Pregnancy Discrimination Act of 1978* amended Title VII to prohibit discrimination against employees or job applicants on the basis of pregnancy and required employers to treat pregnant employees in the same way as employees with medical disabilities.

*The Americans with Disabilities Act of 1990* prohibits discrimination against individuals with disabilities in employment, public services, and public accommodations.

*The Civil Rights Act of 1991* amended several of the federal employment discrimination laws including Title VII of the *Civil Rights Act of 1964, the Civil Rights Act of 1866, the ADEA, the Rehabilitation Act,* and the *Americans with Disabilities Act* (ADA).

The act amended Title VII and the ADA to provide the right to a jury trial and punitive damages (not to exceed $300,000); it amended the *Civil Rights Act of 1866* to prohibit racial harassment in the workplace and in post-hire employment conduct rather than just in hiring and promotions.

### Housing and accommodations

*The Civil Rights Act of 1866* ensures that all citizens of the U.S. shall have the same right, in every state and territory, as is enjoyed by white citizens to inherit, purchase, lease, sell, hold, and convey real and personal property.

*The Fair Housing Act* prohibits discrimination in various types of housing transactions such as sales, renting, and financing on the basis of race, religion, sex, or national origin. *The Fair Housing Amendments Act of 1988* expanded the *Fair Housing Act* to prohibit discriminatory housing practices based on handicap and familial status and provided for enhanced government enforcement of the act, including the recovery of monetary penalties in cases where discrimination is found.

*The Equal Credit Opportunity Act* prohibits creditors from discriminating against credit applicants on the basis of race, color, religion, national origin, sex, marital status, age, because all or part of the applicant's income derives from any public assistance program, or because the applicant has in good faith exercised any right under the Consumer Credit Protection Act.

*Title II of the Civil Rights Act of 1964* prohibits discrimination based on race, color, religion, and national origin in places or public accommodation, such as hotels, restaurants, and certain places of entertainment.

### Voting

*The Voting Rights Act of 1965* protects racial and language minorities from discrimination in the electoral process and from being denied the fair opportunity to elect candidates of their choice.

*The Voting Accessibility for the Elderly and Handicapped Act of 1984* ensures access for handicapped and elderly individuals to polling places for federal elections.

*The Uniformed and Overseas Citizens Absentee Voting Act of 1986* enables members of the Armed Forces and other U.S. citizens who are abroad to register and vote absentee in presidential congressional elections.

*The National Voter Registration Act of 1993* commonly referred to as the *Motor Voter Law,* improves the access to voter registration by requiring states to provide simultaneous voter registration and driver's license applications, provide a mail-in application, and make registration available at various government agencies.

**BJS**

# For electronic versions of this report, visit the BJS website

### *http://www.ojp.usdoj.gov/bjs*

To order paper copies of this or other BJS reports —

- Visit
  *http://www.ncjrs.gov/app/publications/bjspubs.aspx*

- Call 1-800-851-3420

Download datasets and documentation from
the National Archive of Criminal Justice Data —

*http://www.icpsr.umich.edu/NACJD/index.html*

---

# Keep current on criminal justice issues

**Get notices and newsletters:**

**JUSTSTATS**

E-mail notifications of new statistical materials from BJS, the FBI,
and the Office of Juvenile Justice and Delinquency Prevention.
    To subscribe, see http://www.ojp.usdoj.gov/bjs/juststats.htm

**JUSTINFO**

A biweekly electronic newsletter from the National Criminal Justice Reference
Service (NCJRS) with news from BJS, NCJRS, and the other agencies in the
Office of Justice Programs.

    To subscribe, see http://www.ncjrs.gov/subreg.html

**U.S. Department of Justice**
Office of Justice Programs
Bureau of Justice Statistics

Washington, DC 20531

Official Business
Penalty for Private Use $300

N C J   2 2 2 9 8 9

PRESORTED STANDARD
POSTAGE & FEES PAID
DOJ/BJS
Permit No. G-91

This report in portable document format and in ASCII and its related statistical data and tables are available at the BJS World Wide Web Internet site: <http://www.ojp.usdoj.gov/bjs/abstract/crcusdc06.htm>

**Office of Justice Programs**

*Innovation • Partnerships • Safer Neighborhoods*
http://www.ojp.usdoj.gov

The Bureau of Justice Statistics is the statistical agency of the U.S. Department of Justice. Jeffrey L. Sedgwick is director.

This Special Report was written by Tracey Kyckelhahn and Thomas H. Cohen, Ph.D. Sean P. Rosenmerkel verified the report.

Georgette Walsh edited the report, Tina Dorsey produced the report, and Jayne Robinson prepared the report for final printing under the supervision of Doris J. James.

August 2008, NCJ 222989