HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM OSTLING, individually and as personal representative of the ESTATE OF DOUGLAS OSTLING, deceased; JOYCE OSTLING; and TAMARA OSTLING<br><br>  Plaintiffs,<br><br>  v.<br><br>CITY OF BAINBRIDGE ISLAND, a political subdivision of the State of Washington; JON FEHLMAN; and JEFF BENKERT,<br><br>  Defendants. | No. 11-cv-5219 RBL<br><br>ORDER<br><br>(Dkt. #151) |

Following an adverse jury verdict, Defendants have moved for a new trial and a stay of the enforcement of judgment. (Defs.' Mot. for New Trial, Dkt. #151.) For the reasons set forth below, the motions are denied.

## I.   BACKGROUND

A jury found that the City of Bainbridge Island and Chief Jon Fehlman were liable to William and Joyce Ostling for failing to train their officers in dealing with the mentally ill and thereby depriving them of their son in violation of their substantive due process rights. Defendants argue that Plaintiffs' counsel engaged in repeated misconduct, the cumulative effect of which deprived Chief Fehlman and the City of a fair trial. (*See* Defs.' Mot. for New Trial at 7–9.) Further, Defendants claim that the Court erred in numerous rulings, similarly undermining the trial's fairness. Defendants cite numerous grounds for these arguments.

### A.  Errors by Court

Defendants assert their right to a new trial based on the following errors by the Court:

- Denial of a continuance after Chief Fehlman became gravely ill;
- Admission of an edited version of Chief Fehlman's deposition video;
- Exclusion of Chief Fehlman's declaration in support of summary judgment;
- Failure to grant a mistrial due to Plaintiffs' counsel's violation of a motion in limine at opening;
- Admission of testimony by Tamara Ostling "channeling the emotional trauma suffered by her disabled sister."

(Defs.' Mot. for New Trial at 3–6, 10–12.)

### B.  Alleged Misconduct by Plaintiffs' Counsel

In addition to the alleged errors by the Court, Defendants cite the following alleged acts of misconduct by Plaintiffs' counsel:

- Plaintiffs' counsel stated, "The question is fine," after the Court sustained an objection to question form;
- Plaintiffs presented trial transcript in closing;
- Plaintiffs presented "an adulterated exhibit" at closing;
- Plaintiffs' counsel's statements at closing suggesting the jury should "send a message."

(Defs.' Mot. for New Trial at 7–9.)

## II.  DISCUSSION

Federal Rule of Civil Procedure 59 provides: "The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ."  Fed. R. Civ. P. 59(a).  As should be obvious, Rule 59 "does not specify the grounds on which a motion for a new trial may be granted."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Zhang v. Am. Gem Seafoods, Inc.*, 339 F.3d 1020, 1035 (9th Cir. 2003)).  Instead, Rule 59 incorporates "those grounds that have been historically recognized."  *Id.*  Those historical grounds include (but are not limited to) claims that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving."  *Id.* (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)).  The Ninth Circuit has stated that a trial court may grant a new trial "only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice."  *Id.* (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n. 15 (9th Cir. 2000)).

**A.  Denial of Continuance**

Shortly before trial, Chief Fehlman became gravely ill, and Defendants sought a continuance.  The motion was denied.  Defendants argue that "Chief Fehlman was denied the opportunity to defend himself." (Defs.' Mot. for New Trial at 3.)

In deciding whether to grant a continuance, courts should consider the extent to which a party might suffer harm as a result of a denial.  *Comcast of Illinois X v. Multi-Vision Electronics, Inc.*, 491 F.3d 938, 946 (9th Cir. 2007); *see also U.S. v. 2.61 Acres of Land*, 791 F.2d 666, 671 (9th Cir. 1985) (outlining a four-part test for review of a district court's denial of a continuance).  To establish prejudice, a party must "articulate" why a person's absence "deprived them of an opportunity to present evidence in their defense."  *Comcast of Illinois X*, 491 F.3d at 946.

Here, Defendants fail to articulate why Chief Fehlman's presence was necessary, and thus, why the denial of a continuance prejudiced them.  Defendants state that "[h]ad Chief Fehlman been allowed to speak at trial, the jury would have learned about Chief Fehlman as the

leader of the City's police force, his training of City officers, and received a portrait of a man who is dedicated to public service and compassionate toward the mentally-ill, not deliberately indifferent to their rights." (Defs.' Mot. for New Trial at 4.)  But a "portrait" of Chief Fehlman himself was not relevant to the claims.  Plaintiffs alleged that the City and the Chief had failed to train their officers.  Thus, the evidence at issue was whether and to what extent Defendants had trained their officers, not whether Chief Fehlman was "compassionate" toward the mentally ill.  Defendants could have brought any other City or police official to testify on the training procedures or used Chief Fehlman's deposition testimony.  They did neither.

Apart from the fact that they failed to put on evidence of training, Defendants still have not specified what evidence Chief Fehlman would have presented on training.  Both officers Benkert and Portrey testified that they had received no training from the City of Bainbridge Island on how to confront the mentally ill. (Benkert Testimony, 12:14–22, Dkt. #115, May 15, 2012; Portrey Testimony, 19:20–24; 21:3–9, Dkt. #117, May 17, 2012.)  While granting a continuance may have allowed Defendants to present Chief Fehlman in a favorable light personally, such a "portrait" would not inform the jury of the existence or extent of training procedures.  In short, Defendants have not established what Chief Fehlman would have added.

Defendants argue, however, that Chief Fehlman was irreplaceable and "could not have been represented by proxy" because his subjective "state of mind" was at issue. (Defs.' Mot. for New Trial at 2, 5.) Under their reading of the law, "Plaintiffs had to prove Chief Fehlman made a conscious choice to disregard the consequences of his own omissions, and Chief Fehlman knew his failure to train made it highly predictable the mentally ill would have been harmed." (*Id.* at 3 (emphasis omitted)).  Importantly, Defendants base their prejudice argument entirely on the inability of Chief Fehlman to testify as to his subjective state of mind: "Chief Fehlman's testimony was necessary to rebut the claim he was 'deliberately indifferent' because his state of mind was directly at issue . . . ." (Defs.' Reply at 5, Dkt. #165.)  Defendants present, however, an incorrect statement of the law.

In arguing that Chief Fehlman's subjective state of mind was at issue, Defendants rely on *Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002).  Defendants present the following

quote, apparently meant to indicate that a subjective standard applies: "Although *Farmer v. Brennan*, 511 U.S. 825 (1994), establishes a **subjective test for** determining deliberate indifference in the case of **individual defendants**, in that case the Supreme Court made it reasonably clear that the same standard does not apply in actions against government entities involving the adoption of affirmative government policies." *Gibson*, 290 F.3d at 1198–99 (emphasis in Defendants' briefing). Defendants misunderstand the implication of this quote.

*Farmer* holds that a subjective standard applies in eighth-amendment claims against prison officials. In other words, a plaintiff must show that the official was deliberately indifferent and "liability requires consciousness." *Farmer*, 511 U.S. at 840. But, the Supreme Court expressly differentiated the objective standard for failure-to-train claims under *City of Canton v. Harris*, 489 U.S. 378 (1989)—the claim relevant here. "It would be hard to describe the *Canton* understanding of deliberate indifference . . . *as anything but objective*." *Farmer*, 511 U.S. at 841 (emphasis added) ("*Canton*'s objective standard, however is not an appropriate test for determining the liability of prison officials under the Eighth Amendment as interpreted in our cases."). Thus, *Farmer* is clear: an objective standard applies to failure-to-train claims under *City of Canton*; a subjective standard applies to eighth-amendment claims. *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 n.9 (9th Cir. 2010) ("The 'deliberate indifference' standard for municipal liability set forth in *Canton* is different from the subjective 'deliberate indifference' standard set forth in *Farmer*."); *see also Szabla v. City of Brooklyn Park*, 486 F.3d 385, 401 (8th Cir. 2007) (*Farmer* "explained that 'deliberate indifference' in the § 1983 context does not require a subjective consciousness of the risk, even though the same term requires subjective consciousness in the Eighth Amendment context."). This case has nothing to do with the Eighth Amendment. Indeed, Judge Reinhardt's concurring opinion, quoted above, says exactly that—"the same standard does not apply." *Gibson*, 290 F.3d at 1198–99.

Defendants also appear to misunderstand Chief Fehlman's role in this suit. Plaintiffs sued Chief Fehlman in his official capacity, not as an individual. (*See* Am. Compl. ¶ 2; ¶¶ 41–49 (presenting claims against Chief Fehlman for implementation of City policy)). "An official-capacity suit is really just another way of suing the government." *Conner v. Reinhard*, 847 F.2d

384, 394 (7th Cir. 1988). Thus, Defendants' "repeated requests for a continuance to allow Chief Fehlman to recover so that he could defend himself" have no merit. (Defs.' Mot. for New Trial at 3.)[1]

In sum, the Court reasoned that a continuance would have severely delayed the trial and inconvenienced the parties and the Court. Defendants failed to suggest at trial what prejudice would be suffered by Chief Fehlman's absence, and they continue in that failure after trial. Lastly, Defendants presented no other police officers or City officials to testify on training, and their own failure to present evidence is not grounds for a new trial. The Court must conclude that it did not err in denying a continuance.

### B. Admission of Chief Fehlman's Deposition and Exclusion of Declaration

Defendants next argue that it was error to admit video of Chief Fehlman's deposition while excluding a declaration filed in support of summary judgment. Defendants' brief on this point is entirely without citation to the record or to authority. The Court does not understand the basis for this argument. Under Fed. R. Civ. P. 32, "A party may use for any purpose the deposition of a witness, whether or not a party, if the court finds . . . that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment." Fed. R. Civ. P. 32(a)(4). The Court excluded the declaration as hearsay. Fed. R. Evid. 801(d), 802. Defendants cite no law suggesting this was improper.

### C. Violation of Motion in Limine and Denial of Motion for Mistrial

Before trial, the Court excluded "Defendant Benkert's Los Angeles Police Department Disciplinary Records," including "all testimony and evidence regarding the proposed discipline or untruthfulness findings." (Order at 3, Dkt. #98.) At opening, Plaintiffs' counsel stated that Officer Benkert "resigned in lieu of termination," believing that this did not fall within the Court's order. The Court reviewed the motion in limine and its prior order and sustained Defendants' objection, but denied Defendant's motion for a mistrial. (Trial Transcript at 4:12,

---

[1] Defendants include many more references to Chief Fehlman as though he were sued in his individual capacity. For example, "Judgment was entered against the one *individual* who was neither able to communicate nor defend himself"; "[Defendants] moved for bifurcation so Chief Fehlman could be available to assist in his and the City's defense"; "the one theory on which Plaintiffs' prevailed [sic] . . . was the charge against Chief Fehlman." (Defs.' Mot. for New Trial at 2, 4) (emphasis added); (Defs.' Reply at 4, Dkt. #165) ("The jury rendered an invalid verdict against the one individual who was not present and could not defend himself.").

Dkt. #147.)  The Court then instructed the jury: "I have sustained the objection and ask you to disregard the reasons why Mr. Benkert came to Bainbridge Island, but there's no reason for you to consider anything about termination or in lieu of termination.  It doesn't exist. It's not real." (*Id.* at 4:24–5:3.)

Defendants fail to establish prejudice or error by the Court.  First, Plaintiffs' counsel's comments reflected on Officer Benkert, who was exonerated on all charges.  Defendants leave entirely unexplained how counsel's statements—which relate solely to Officer Benkert—prejudiced Chief Fehlman and the City.  Second, Defendants fail to address why the Court's curative instruction was insufficient.  There was no error.

### C.  Testimony of Tamara Ostling

Defendants argue that the Court erred by admitting testimony from Tamara Ostling "regarding her own emotional trauma and the trauma suffered by her sister, who is unable to speak on her own behalf."  (Defs.' Mot. for New Trial at 11, Dkt. # 151.)  Defendants provide no citation to the record or citation to legal authority.  The Court is thus unsure what precisely constitutes the objectionable matter.

### D.  Statement by Plaintiffs' Counsel Regarding Sustained Objection

While presenting testimony from William Ostling, Defense counsel objected to a question as argumentative.

> Mr. Estes (Defendants' counsel): Objection, argumentative.
> The Court: Sustained.
> Mr. Roberts (Plaintiffs' counsel): The question is fine.
> Mr. Estes: Your Honor –
> The Court: No, I sustained it. Start over.
> Mr. Roberts: You want me to re-ask it?
> The Court: Yes, without the conspiracy theory reference.
> Mr. Roberts: I understand the objection, and I apologize.

(Trial Transcript 167:12–25, Dkt. #116.)  Defendants assert that these comments "degraded the jury's understanding of the role of the attorneys played in this case, and that degradation of the legal process prejudiced Chief Fehlman and the City and was reflected in the (invalid) verdict and damages against them."  (Defs.' Mot. for New Trial at 9.)  Defendants cite no legal authority suggesting that such an tiny and inane comment might support the level of prejudice they claim.

**E.   Presentation of Trial Transcript at Closing**

Defendants argue that Plaintiffs briefly showed trial transcript to the jury during closing. This "confused the jury about the role attorneys played . . . and caused the jury to rely on a two-dimensional transcript over their own memories." (Defs.' Mot. for New Trial at 9.) Defendants do not suggest that the transcript was inaccurate or even specify what the transcript said. They do not explain how the jury relied on it, or how it prejudiced the City or Chief Fehlman.

**F.   "Adulterated" Exhibit at Closing**

Defendants argue that "Plaintiffs presented an adulterated exhibit fashioned from a Kitsap County Sheriff's diagram relating to the incident at issue." (Defs.' Mot. for New Trial at 9, Dkt. #151.) Defendants do not cite to the record, explain the significance of the exhibit, the nature of the "fabrication," or any legal authority in support of their position. Defendants are apparently referring to an illustrative exhibit that Plaintiffs created from Exhibit 42. (*See* Trial Transcript at 42:3–24, Dkt. #162). The Court promptly instructed counsel to take down the exhibit. Regardless of the propriety, Defendants fail to explain how prejudice resulted.

**G.   Arguments at Closing Regarding "Sending a Message"**

Lastly, Defendants argue that Plaintiffs' counsel "advance[d] prejudicial arguments to the effect Chief Fehlman and the City had 'still' not implemented a training program to deal with the mentally ill." (Defs.' Mot. for New Trial at 12, Dkt. #151.) This "enabled Plaintiffs to argue to the jury that it needed to 'send a message' . . . to develop a better training regimen."

Ironically, it was Defendants who discussed at closing the appropriate "message" that the jury should send. (Trial Transcript at 80:23, 111:25, 122:8–18, Dkt. #163) ("If there's any message in this case, as difficult as it is, is that people who have paranoid schizophrenia need treatment and they need medication."). Defendants again cite no law in support of their position, and the Court sees no prejudice.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for a new trial (Dkt. #151) is **DENIED**. Defendants' motion for a stay of proceedings to enforce the judgment is **DENIED** as moot.

Dated this 28th day of September 2012.

*Ronald B. Leighton*
Ronald B. Leighton
United States District Judge