HONORABLE RONALD B. LEIGHTON

1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM OSTLING, individually and as Personal Representative of the Estate of DOUGLAS OSTLING, deceased; JOYCE OSTLING; and TAMARA OSTLING,<br><br>        Plaintiffs,<br><br>    v.<br><br>CITY OF BAINBRIDGE ISLAND, a political subdivision of the State of Washington; JON FEHLMAN; and JEFF BENKERT,<br><br>        Defendants. | CASE NO. 3:11-cv-05219-RBL<br><br>ORDER RE: ATTORNEYS' FEES AND COSTS |

## I.    INTRODUCTION

THIS MATTER is before the Court on Plaintiffs' Motion for Attorneys' Fees and Costs [Dkt. #155].  The case arises out of the death of Douglas Ostling, a mentally ill man who was shot in his home by Bainbridge Island police officers.  A jury awarded Plaintiffs one million dollars in damages on a failure-to-train claim and a claim of deprivation of familial companionship.  The jury rejected Plaintiffs' unlawful search, excessive force, and failure-to-aid claims.

1    The parties dispute the amount of the attorneys' fees and costs.  Plaintiffs request fees at

2    their hourly rate plus a 1.5 multiplier based on the novelty of the failure-to-train claim, for a total

3    award of $688,535.83.  Defendants argue that fees are not warranted, or alternatively, that fees

4    should be reduced by one half, for a total of $137,653.90, because Plaintiffs prevailed on only

5    one of their four claims.  For the reasons set forth below, the Court awards Plaintiffs' fees and

6    costs in the amount of $392,401.84.

7                                    **II.    DISCUSSION**

8        **A.  Plaintiffs are a Prevailing Party**

9        Absent unusual circumstances, the Court shall award reasonable attorneys' fees and costs

10   under 42 U.S.C. § 1988 to prevailing parties in civil rights cases.   Plaintiffs are "prevailing

11   parties" for attorneys' fees purposes if they "succeed on any significant issue in litigation which

12   achieves some of the benefit the parties sought in bringing suit."  *Farrar v. Hobby*, 506 U.S. 103,

13   109 (1992) (citations omitted).

14       The jury awarded Plaintiffs a one million dollar verdict on their failure-to-train claim.  In

15   light of the Court's denial of Defendants' Motion for Judgment as a Matter of Law [Dkt. #148]

16   and Defendants' Motion for a New Trial [Dkt. #151], Plaintiffs' one million dollar verdict is

17   certainly a success on a significant issue.  Plaintiffs are a prevailing party and shall be awarded

18   reasonable fees.  The issue is what fees are reasonable.

19       **B.  Reasonable Fees**

20       The first step in determining reasonable fees is to calculate the lodestar figure, by taking

21   the number of hours reasonably expended on the litigation and multiplying it by the appropriate

22   hourly rate.  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The Court should exclude

23   overstaffed, redundant, or unnecessary time.  *Id.* at 434.  The Court must also consider the extent

24

of Plaintiffs' success, as that is a "crucial factor" in determining an appropriate award. *Id.* at 440.

After determining the lodestar figure, the Court should then determine whether to adjust the lodestar figure up or down based on any *Kerr* factors that have not been subsumed in the lodestar calculation.[1]  *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975) *cert. denied*, 425 U.S. 951 (1976).

### 1. Reasonable Hourly Rate

In determining hourly rates, the Court must look to the "prevailing market rates in the relevant community." *Bell v. Clackamas County*, 341 F.3d 858, 868 (9th Cir. 2003).  The rates of comparable attorneys in the forum district are usually used.  *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).  In making its calculation, the Court should also consider the experience, skill, and reputation of the attorney requesting fees.  *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995).  The Court is allowed to rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate.  *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Plaintiffs propose rates for associates at $325 and $350, and for a partner at $550, based on a survey for attorneys in the greater Seattle area, specifically at law firms Perkins Coie and Lane Powell.  Defendants respond that the rates are not comparable because Perkins Coie and Lane Powell are large, international law firms, not plaintiff-side, contingency-based tort firms.

---

[1] The twelve *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 69-70 (9th Cir. 1975), *cert. denied*, 425 U.S. 951 (1976). These considerations are consistent with Washington Rule of Professional Conduct 1.5.

1    Even though those firms have a significant litigation practice, the similarities with Plaintiffs'

2    firm are limited.  That said, Defendants do not propose a more appropriate rate.  Instead,

3    Defendants suggest the discrepancies should affect the proposed multiplier.

4         The Court will leave the rate as suggested by Plaintiffs ($325 for first chair associate

5    Nathan Roberts; $350 for second chair associate Julie Kays; $550 for consultant partner John

6    Connelly; and $125 for litigation paralegal Pamela Wells).  The Court notes that it allowed

7    similar rates in a prior case involving local contingency-fee attorneys.  *Cornhusker v. Kachman*,

8    No. 2:09-cv-00273-RBL, 2009 WL 2853119, at *4 (W.D. Wash. Sept. 1, 2009) (rates between

9    $350-$450).  *See also Ryan v. Dreyfus*, 2010 WL 1692057, at *5 (W.D. Wash. Apr. 26, 2010)

10   ($350 rate for civil rights plaintiffs' attorney).  The proposed rates are reasonable.

11         **2.   Reasonable Number of Hours**

12         Defendants argue that Plaintiffs' fee request is unreasonable because Plaintiffs lost on a

13   majority of their claims, and because many hours are redundant or unnecessary.  Plaintiffs argue

14   their request is reasonable because they billed half the hours of Defense counsel and prevailed on

15   the significant failure-to-train claim.

16         "By and large, the court should defer to the winning lawyer's professional judgment as

17   to how much time he was required to spend on the case; after all, he won, and might not have,

18   had he been more of a slacker."  *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir.

19   2008).  In determining the reasonable number of hours, the Court may exclude those hours that

20   are excessive, redundant, or otherwise unnecessary.  *Hensley v. Eckerhart*, 461 U.S. 424, 434

21   (1983); *Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007).

22         *a.   Claim by Claim*

23         Defendants argue that hours billed for successful claims should be separated from hours

24   billed for unsuccessful claims.  When the claims arise from a "common core of facts," however,

1   the Court will not evaluate the hours spent on each claim, as "[m]uch of counsel's time will be

2   devoted generally to the litigation as a whole, making it difficult to divide the hours expended on

3   a claim-by-claim basis." *Hensley,* 461 U.S. at 435. Plaintiffs' claims all arise from the same set

4   of facts—the shooting and death of Douglas Ostling. Thus, the Court will not parse hours claim

5   by claim.

6           *b.  Non-Contemporaneous Billing; Fees on Fees; Paralegal Fees*

7           Defendants argue that the Court should exercise its discretion and deny fees because

8   Plaintiffs' counsel did not maintain contemporaneous billing. But, as Defendants note,

9   contemporaneous billing is not mandatory in the Ninth Circuit. In preparing the fee request,

10  Plaintiffs' counsel reviewed their notes and correspondence. The Court declines to deny fees on

11  those grounds.

12          Defendants also argue that the hours Plaintiffs spent working on their fee request should

13  be denied. As Plaintiffs note, however, "[w]ork performed on a motion for fees under § 1988(b)

14  is compensable." *McGrath v. County of Nevada*, 67 F.3d 248, 253 (9th Cir. 1995). The hours

15  billed working on the fee request is minimal and is awarded.

16          Finally, the Court awards fees for paralegal Pamela Wells. *Missouri v. Jenkins by Agyei*,

17  491 U.S. 274, 288 (1989) (approving award of paralegal fees).

18          *c.  Multiple Attorneys*

19          Defendants' main contention is that Plaintiffs' counsel requests hours where multiple

20  attorneys were not necessary, specifically at depositions and through the participation of a senior

21  partner. Plaintiffs respond that the hours reflect the teamwork needed to pursue this case.

22          Multiple Plaintiffs' attorneys were present at most stages of this litigation. Because Mr.

23  Roberts is billing at the rate of an experienced associate (a rate earned through good, first-chair

24  quality work), the Court strikes the supporting attorneys' hours at depositions, as well as the

senior partner's hours observing trial.  This teamwork appears to be redundant and supervisory in nature, and would not normally be billed to a fee paying client.  The Court approves the other hours billed by multiple attorneys, including time reviewing briefing, developing strategy, and preparing the case for trial.

The Court eliminates the following fees:

| DATE | ATTORNEY | HOURS | DESCRIPTION |
|---|---|---|---|
| 12/20/2011 | JAK | 7.0 | Prepare for and attend Deposition of Bill Ostling |
| 12/21/2011 | JAK | 4.0 | Prepare for and attend Deposition of Bill Ostling |
| 1/2/2012 | JAK | 3.5 | Attend deposition of Officer Benkert |
|  |  | 6.0 | Prepare for and attend deposition of Officer Portrey |
| 1/17/2012 | JAK | 4.5 | Attend deposition of Chief Fehlman |
|  |  | 1.75 | Prepare for and attend deposition of Carla Sias |
|  |  | 1.0 | Attend deposition of Ben Sias |
|  |  | 1.0 | Attend deposition of Chris Jensen |
|  |  | 1.75 | Prepare for and attend deposition of Officer Berg |
| 1/18/2012 | JAK | 3.5 | Attend deposition of Ellis Amdur |
| 1/19/2012 | JAK | 4.0 | Prepare for and attend deposition of defense expert Bragg |
| 1/19/2012 | JAK | 2.0 | Attend deposition of defense expert Fountain |
| 1/23/2012 | JAK | 3.0 | Attend deposition of Van Blaricom |
| 1/24/2012 | JAK | 3.5 | Attend deposition of Dr. Cummins |
| 1/31/2012 | JAK | 12.0 | Travel to and attend depositions of Drs. Izenberg and Nelson |
| TOTAL | JAK | HOURS DEDUCTED: 58.5 | |
| 1/2/2012 | JRC | 7.5 | Attend Depositions of Officer Portrey and Defendant Benkert |
| 1/16/2012 | JRC | 4.5 | Meeting w/ NPR; Deposition Preparation |
| 1/17/2012 | JRC | 4.5 | Deposition of Defendant Chief Fehlman |
| 5/14/2012 | JRC | 3.0 | Observe opening statement, feedback to NPR |

| 5/15/2012 | JRC | 3.5 | Observe trial witnesses; trial strategy conference |
| 5/30/2012 | JRC | 1.5 | Observe first portion of NPR Closing |
| 6/1/2012 | JRC | 1.5 | Courthouse for Jury Verdict |
| **TOTAL** | **JRC** | **HOURS DEDUCTED: 26** | |

The lodestar amount for the work performed by Plaintiffs' attorneys is $363,422.50, calculated by multiplying each attorney's total hours by the hourly rate:

| Individual | Hours Requested | Hours Granted | Rate | Lodestar (pre-multiplier) |
| --- | --- | --- | --- | --- |
| Nathan P. Roberts | 668.1 | 668.1 | $325 | $217,132.50 |
| Julie A. Kays | 293.5 | 235 | $350 | $82,250 |
| John R. Connelly, Jr. | 79.8 | 53.8 | $550 | $29,590 |
| Pamela S. Wells | 275.6 | 275.6 | $125 | $34,450.00 |
| **TOTAL** | | | | **$363,422.50** |

      *d.   Further Adjustment is Not Warranted*

The final step in fee assessment is evaluating whether to enhance or reduce the presumptively reasonable lodestar figure based on the Court's evaluation of those *Kerr* factors not subsumed in the lodestar calculation. *Ballen v. City of Redmond*, 466 F.3d 736, 746 (9th Cir. 2006). Plaintiffs argue for a 1.5 multiplier largely based on the novelty of the failure-to-train claim and the risk involved in pursuing it. Defendants argue for a one half reduction based on Plaintiffs' failure to establish a majority of their claims.

In evaluating the factors, the Court notes that there is some novelty in pursuing a claim for failure-to-train officers about mental illness. And Plaintiffs' counsel, although relatively inexperienced, performed skillfully at trial. Still, Plaintiffs' counsel quickly accepted this case, suggesting that it was a desirable one.

1    The most dispositive factors are the results obtained and the time and labor required.

2    Plaintiffs lost three of the four claims they pursued, including the use of force claim, which

3    played a large role at trial and in case preparation.  But, Plaintiffs' counsel billed less than half

4    the hours of the Defense team.  Pl.'s Reply, Dkt. #172 at 1.  These two significant factors

5    counterbalance each other.

6    The original lodestar amount provides an appropriate award.  It provides a balance

7    between encouraging attorneys to take civil rights cases and preventing inappropriate windfalls.

8    After evaluating the *Kerr* factors, no adjustment to the original lodestar is warranted.

9    **C.  Reasonable Costs**

10   Defendants also argue that "[t]he Court should exclude parking, lodging, meals, trial

11   consulting, postage, telephone, travel, and transportation expenses because they constitute

12   overhead and are not generally taxable."  Def.'s Fee Opp., Dkt. #167 at 12.  Plaintiffs argue that

13   the costs are recoverable as expenses normally charged to a fee paying client.  In the Ninth

14   Circuit, "[i]t is well established that attorney's fees under 42 U.S.C. § 1988 include reasonable

15   out-of-pocket litigation expenses that would normally be charged to a fee paying client, even if

16   the court cannot tax these expenses as 'costs' under 28 U.S.C. § 1920."  *Trustees of Const. Indus.*

17   *& Laborers Health & Welfare Trust v. Redland Ins. Co.,* 460 F.3d 1253, 1257 (9th Cir. 2006).

18   Thus, expenses recoverable under § 1988 may be greater than taxable costs.

19   Plaintiffs' expenses for meals, shipping, postage, parking, and travel are recoverable, as

20   they are generally charged to fee paying clients.  Plaintiffs' costs associated with deposing

21   Defendants' experts are also recoverable.  *See Harris v. Marhoefer,* 24 F.3d 16, 19-20 (9th Cir.

22   1994) (affirming award of expenses for defense expert's fee at deposition, postage, copying

23   costs, hotel bills, meals, messenger service, and employment record reproduction).  Plaintiffs

24   were charged $3,100 by defense experts, and are awarded that amount.

1       Precedent is less clear regarding costs for a party's own experts.  The Court joins other

2  district courts in this circuit and denies Plaintiffs' request to recoup fees paid to its own experts.

3       In *West Virginia Univ. Hosp. Inc. v. Casey,* 499 U.S. 83, 102, 111 S.Ct. 1138, 113

L.Ed.2d 68 (1991), the Supreme Court concluded that 42 U.S.C. § 1988 conveys

4      no authority to shift expert fees in civil rights cases to the losing party. . . .  After

*Casey,* Congress amended § 1988 to specifically provide for the recovery of

5      expert fees in cases brought to enforce a provision of 42 U.S.C. § 1981 or 1981a.

Congress could have amended § 1988 to allow for expert fees in all cases covered

6      by § 1988(b), but did not.  The *Casey* decision therefore stands with regard to §

1983 cases. . . .  Because Plaintiffs pursued § 1983 claims, they cannot shift the

7      burden of their experts' fees to Defendants.

8  *Agster v. Maricopa County*, 486 F. Supp. 2d 1005, 1019 (D. Ariz. 2007) (internal citations

9  omitted); *see also Ruff v. County of Kings*, 700 F. Supp. 2d 1225, 1243 (E.D. Cal. 2010).

10      The Court reduces Plaintiffs' cost request by $61,671.66 for non-compensable expert

11  fees.  The Court also reduces costs by $588.58 for non-compensable overhead expenses.

12  Plaintiffs' other expenses, totaling $25,879.34, are approved.  In total, the Court awards

13  Plaintiffs $28,979.34 in costs.

14                     **III.   CONCLUSION**

15      The Court awards Plaintiffs $363,422.50 in fees and $28,979.34 in costs, for a total

16  award of $392,401.84.  The clerk shall prepare a judgment in this amount.

17      IT IS SO ORDERED.

18

19      Dated this 11th day of October, 2012.

20

21                               _____

22                               Ronald B. Leighton

                               United States District Judge

23

24